*Solicitation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nogin, Inc., *et al.*, | ) | Case No. 23-11945 (CTG) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN
## OF NOGIN, INC. AND ITS DEBTOR AFFILIATES

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi
John H. Knight
Michael J. Merchant
David T. Queroli
Matthew P. Milana
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701

*Attorneys for Debtors
and Debtors in Possession*


 Dated:  January 22, 2024
          Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification number are: Nogin, Inc. (0703); Nogin Commerce, Inc. (0719); Native Brands Group LLC (0504).  The mailing address for the Debtors is 105 E. 34th St., Suite 137, New York, NY 10016.

## TABLE OF CONTENTS

Page

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ................................................................ 1

    A.    *Defined Terms* ................................................................................................ 1

    B.    *Rules of Interpretation* ................................................................................ 18

    C.    *Computation of Time* ................................................................................... 18

    D.    *Governing Law* ............................................................................................ 18

    E.    *Reference to Monetary Figures* .................................................................. 18

    F.    *Reference to the Debtors* ............................................................................ 18

    G.    *Controlling Document* ................................................................................. 19

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS** ................................................ 19

    A.    *Administrative Claims* ................................................................................ 19

    B.    *Professional Fee Claims* ............................................................................ 20

    C.    *Priority Tax Claims* .................................................................................... 21

    D.    *DIP Claims* ................................................................................................. 21

    E.    *Indenture Trustee Fees and Expenses* ....................................................... 22

    F.    Consenting Noteholder Group Advisors Fees and Expenses ....................... 22

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........... 23

    A.    *Summary of Classification* .......................................................................... 23

    B.    *Treatment of Claims and Interests* ............................................................ 23

    C.    *Special Provision Governing Unimpaired Claims* ..................................... 27

    D.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* .......... 27

    E.    *Controversy Concerning Impairment* ........................................................ 27

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................... 27

    A.    *Plan Implementation* ................................................................................... 27

    B.    *Liabilities, Obligations, or Claims* ............................................................ 30

    C.    *Sources of Consideration for Plan Distributions* ....................................... 30

    D.    *Reorganized Equity Interests* ..................................................................... 30

    E.    *Plan Securities and Related Documentation; Exemption from Securities Laws* .......... 30

    F.    *Creditor Litigation Trustee and Creditor Litigation Trust* ........................ 30

    G.    *Debtor Liquidating Trustee and Debtor Liquidating Trust* ....................... 33

    H.    *Plan Administrator* ..................................................................................... 35

    I.    *Cancellation of Existing Interests, Indebtedness, and Other Obligations* ...... 35

i

J.      *Corporate Action* ................................................................................ 36

K.      *Effectuating Documents; Restructuring Transactions* ........................... 37

L.      *Exemption from Certain Taxes and Fees* .............................................. 39

M.      *Insurance Policies* .............................................................................. 39

N.      *Expedited Tax Determination of the Debtors* ...................................... 40

O.      *Actions Required from Debtors' Insiders and Affiliates to Exempt Themselves from Receiving a Recovery on Account of Senior Note Claims* ..................... 40

P.      *Consolidation of the Debtors for Plan Purposes* ................................. 40

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................................................................................... 41

A.      *General Treatment* .............................................................................. 41

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases* ................. 42

C.      *Rejection Damages Claims* .................................................................. 43

D.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements* .......... 43

E.      *Reservation of Rights* .......................................................................... 44

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ........................ 44

A.      *Distribution Date* ................................................................................ 44

B.      *Rights and Powers of Distribution Agent* ............................................ 44

C.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions* ................ 45

D.      *Compliance with Tax and Other Requirements* .................................... 46

E.      *Allocations* ......................................................................................... 47

F.      *No Postpetition Interest on Claims* ..................................................... 47

G.      *Setoffs and Recoupment* ...................................................................... 47

H.      *Claims Paid or Payable by Third Parties* ............................................ 48

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ................................................................. 49

A.      *Claims and Interests Administration Responsibilities* .......................... 49

B.      *Estimation of Claims* ........................................................................... 49

C.      *Adjustment to Claims Register Without Objection* ............................... 49

D.      *Time to File Objections to Claims* ....................................................... 50

E.      *Disallowance of Claims* ....................................................................... 50

F.      *Late Claims* ........................................................................................ 50

G.      *Distributions After Allowance; Disputed Claims Reserve* .................... 50

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ........................................................................................... 51

    A.    *Vesting of Assets* ................................................................................. 51

    B.    *Binding Effect* ..................................................................................... 51

    C.    *Compromise and Settlement of Claims, Interests, and Controversies* ............ 51

    D.    *Discharge of Claims and Termination of Interests* ................................. 52

    E.    *Releases* .............................................................................................. 52

    F.    *Exculpation* ......................................................................................... 54

    G.    *Injunction* ............................................................................................ 54

    H.    *Subordination Rights* ......................................................................... 56

    I.    *Release of Liens* .................................................................................. 56

**ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ............ 56

    A.    *Conditions Precedent to Effective Date* ............................................... 56

    B.    *Waiver of Conditions* ......................................................................... 57

    C.    *Substantial Consummation* ................................................................. 57

    D.    *Effect of Non-Occurrence of Conditions to the Effective Date* ................. 58

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............ 58

    A.    *Modification and Amendments* ........................................................... 58

    B.    *Effect of Confirmation on Modifications* ............................................. 58

    C.    *Revocation or Withdrawal of the Plan* ............................................... 58

**ARTICLE XI. RETENTION OF JURISDICTION** ................................................................. 59

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .............................................................. 61

    A.    *Payment of Statutory Fees* .................................................................. 61

    B.    *Plan Supplement* ................................................................................. 61

    C.    *Immediate Binding Effect* ................................................................... 61

    D.    *Additional Documents* ........................................................................ 62

    E.    *Reservation of Rights* ......................................................................... 62

    F.    *Service of Documents* ......................................................................... 62

    G.    *Term of Injunctions or Stays* .............................................................. 64

    H.    *Entire Agreement* ............................................................................... 64

    I.    *Nonseverability of Plan Provisions* .................................................... 64

    J.    *Dissolution of Committee* ................................................................... 65

## INTRODUCTION

Nogin, Inc., Nogin Commerce, Inc., and Native Brands Group LLC jointly propose the following *Joint Chapter 11 Plan of Nogin, Inc. and Its Debtor Affiliates.* Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code (as defined below). The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, and projections, and for a summary and analysis of this Plan, the treatment provided for herein and certain related matters. Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in Article I.A of the Plan.

### ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

A.   *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.   **Ad Hoc Committee of Noteholders** means the ad hoc committee of Consenting Noteholders advised by the Consenting Noteholder Group Advisors, each of whom is a signatory to the Restructuring Support Agreement.

2.   **Administrative Claim** means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; and (ii) Professional Fee Claims.

3.   **Administrative Claims Bar Date** means the date that is thirty (30) days following the Effective Date, except as specifically set forth in Article II.A.

4.   **Affiliate** has the meaning ascribed to such term set forth in Bankruptcy Code section 101.

5.   **Allowed** means with respect to any Claim: (i) a Claim that is evidenced by a Proof of Claim filed by the Claims Bar Date in accordance with the Claims Bar Date Order (or a Claim for which a Proof of Claim is not or shall not be required to be filed pursuant to the Plan, the Bankruptcy Code or a Final Order of the Bankruptcy Court); (ii) a Claim that is listed in the Schedules, if any, as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely filed; (iii) a Claim Allowed pursuant to the Plan or a Final Order; or (iv) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution; *provided, that*, with respect to a Claim described in clauses (i) and (ii) above, such Claim shall be

1

considered Allowed only if and to the extent that no objection to the allowance of such Claim has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or, if such an objection has been so interposed, then only if and to the extent that such Claim has been Allowed by a Final Order; *provided, further, that*, unless expressly waived by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

6.      **Allowed Senior Notes Claim** means an Allowed Claim on account of the Senior Notes as set forth in <u>Article III.B.3.b.</u>

7.      **Alternative Restructuring** means any sale, assignment, assumption and assignment of Executory Contracts or Unexpired Leases, abandonment, disposition, new-money investment, restructuring, reorganization, merger, amalgamation, acquisition, consolidation, dissolution, debt investment, equity investment, liquidation, tender offer, recapitalization, plan of reorganization, share exchange, business combination, capital structure inconsistent with the Restructuring Term Sheet, or similar transaction involving any one or more Debtors, or any portion of any of their assets, in each case in whole or in part, or the debt, equity, or other interests in any one or more Debtors. For the avoidance of doubt, an Asset Sale Transaction or a Sale Transaction involving a Buyer other than the Plan Sponsor or its designee shall constitute an Alternative Restructuring for purposes of determining the Net Cash Proceeds available for the Senior Note Cash Recovery.

8.      **Asset** means all of the right, title, and interest of any of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

9.      **Asset Purchase Agreement** means an agreement to purchase substantially all of the Assets of the Debtors.

10.     **Asset Sale Transaction** means the sale of substantially all of the Assets of the Debtors to the Buyer in accordance with the terms of the Asset Sale Transaction Documents.

11.     **Asset Sale Transaction Documents** means the Asset Purchase Agreement and any and all related agreements and schedules in connection therewith.

12.     **Assumption Dispute** means a pending objection relating to assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

13.     **Assumption Notice** means any notice filed pursuant to the Bidding Procedures Order related to the potential assumption and assignment of Executory Contracts or Unexpired Leases.

14.     **Auction** shall have the meaning set forth in the Bidding Procedures.

15.     **Available Cash** means all of the Debtors' Cash on hand less amounts required (a) to pay Holders of Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims, (b) for the Disputed Claims Reserve (if any),

2

(c) for the Debtor Liquidating Trust Initial Funding Amount or Post-Effective Date Debtor(s) Initial Funding Amount, as applicable, (d) the Indenture Trustee Fees and Expenses and (e) the Consenting Noteholder Group Advisors Fees and Expenses.

16.     **Avoidance Actions** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law.

17.     **Back-Up Bidder** shall have the meaning set forth in the Bidding Procedures.

18.     **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

19.     **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

20.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code, chambers rules, and local bankruptcy rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

21.     **Bidding Procedures** shall have the meaning set forth in the Bidding Procedures Order.

22.     **Bidding Procedures Order** means that certain *Order (I) Establishing Bidding Procedures for the Solicitation of Alternative Transactions to the Proposed Chapter 11 Plan, (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (III) Approving Assumption and Assignment Procedures, (IV) Scheduling a Sale Hearing, (V) Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. 162].

23.     **Bluestar Alliance** means a brand management company, which collectively includes, among other brands, but for purposes of this Plan shall only include and refer to: (a) S&S Brand Holdings, LLC, (b) BKST Brand Holdings LLC, (c) BB Brand Holdings LLC, (d) Justice Brand Holdings, LLC, and (e) HRLY Brand Holdings LLC, and each of the respective Affiliates.

24.     **Bridge Loan Claims** means the claims arising under the Bridge Loan provided by the Bridge Loan Agent, pursuant to the Bridge Loan Security Agreement and evidenced by the Bridge Loan Promissory Note.

25.     **Bridge Loan** means the Debtors' indebtedness evidenced by the Bridge Loan Promissory Note.

3

26.    **Bridge Loan Agent** means B. Riley Securities, Inc., in its capacity as agent and lender to the Bridge Loan.

27.    **Bridge Loan Promissory Note** means that certain Secured Promissory Note, dated as of November 16, 2023, by and among the Debtors and the Bridge Loan Agent.

28.    **Bridge Loan Security Agreement** means that certain Security Agreement, dated as of November 16, 2023, by and among the Debtors and the Bridge Loan Agent.

29.    **Business Day** means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

30.    **Buyer** means (i) the Successful Bidder in the Notice of Auction Results or (ii) the Back-Up Bidder, if any, in the Notice of Auction Results, as applicable.

31.    **Cash** means the legal tender of the United States of America or the equivalent thereof.

32.    **Cash Settlement Consideration** means U.S. dollars in the amount of $15,500,000.

33.    **Cash Settlement Differential** means the positive difference, if any, resulting from the subtraction of (y) the Net Cash Proceeds from an Alternative Restructuring, if any, which the Indenture Trustee receives for the benefit of the Holders of Allowed Senior Notes Claims from (z) the Cash Settlement Consideration.

34.    **Cause of Action** means controversies, liabilities, obligations, rights, suits, damages, judgments, claims, any right of setoff, counterclaim, or recoupment, any claim for breach of contract or for breach of duties imposed by law or in equity, any claim or defense including fraud, and any demands whatsoever, including Avoidance Actions, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

35.    **Chapter 11 Cases** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court.

36.    **Claim** shall have the meaning set forth in section 101(5) of the Bankruptcy Code, as against a Debtor.

37.    **Claims Bar Date** means the deadline for filing Proofs of Claim, as established by, and set forth in, the Claims Bar Date Order.

38.    **Claims Bar Date Order** means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 199].

4

39.     **Claims Register** means the official register of Claims maintained by Donlin, Recano & Company, Inc., as the claims, noticing, and solicitation agent in the Chapter 11 Cases.

40.     **Class** means any group of Claims or Interests classified under the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

41.     **Confirmation Date** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

42.     **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

43.     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

44.     **Consenting Noteholders** means the members of the Ad Hoc Committee of Noteholders.

45.     **Consenting Noteholder Group Advisors** means counsel to the Ad Hoc Committee of Noteholders, Brown Rudnick LLP, and Delaware co-counsel, and financial advisor to the Ad Hoc Committee of Noteholders, GLC Advisors & Co, LLC.

46.     **Consenting Noteholder Group Advisors Fees and Expenses** means the reasonable and documented fees and expenses of each of the Consenting Noteholder Group Advisors, which shall include, with respect to GLC Advisors & Co., LLC ("**GLC**"), only those fees and expenses due to GLC pursuant to its engagement letter dated as of November 14, 2023, between GLC and the Ad Hoc Committee of Noteholders (the "**Engagement Letter**") as set forth in sections 2(a) and 2(b)(i) of the Engagement Letter and, with respect to the incentive fee set forth in section 2(b)(ii) thereof, the incentive fee shall only qualify as Consenting Noteholder Group Advisors Fees in the amount equal to 10% of the aggregate Consideration paid by the Buyer (as defined in the Bidding Procedures) in excess of the aggregate Consideration offered by the Stalking Horse Bidder (as defined in the Bidding Procedures) in its Stalking Horse Bid (as defined in the Bidding Procedures) that opens the bidding process pursuant to the Bidding Procedures, provided that, in the event the Stalking Horse Bid is the only Qualified Bid, no incentive fee shall be due and owing to GLC.  For purposes of this definition, the term "Consideration" means Consideration as defined in the Engagement Letter, but only to the extent that such Consideration is received by the Consenting Noteholders pursuant to the Plan.

47.     **Creditors' Committee** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.  *See* Docket No. 81.

48.     **Creditor Litigation Trust** means the trust established under the Plan in accordance with the Creditor Litigation Trust Agreement.

49.     **Creditor Litigation Trust Agreement** means the agreement establishing the Creditor Litigation Trust, as drafted by the Ad Hoc Committee of Noteholders and in form and

5

substance acceptable to the Debtors, the Ad Hoc Committee of Noteholders and the Plan Sponsor, to be included in the Plan Supplement.

50.    **Creditor Litigation Trust Assets** shall consist of (a) the Retained Causes of Action, including any and all proceeds thereof, together with all privileges related thereto (including, but not limited to, any lawyer client and work product privileges), and the Creditor Litigation Trust Initial Funding Amount, if any, (b) all Assets of the Estates that are (i) not transferred to the Buyer, (ii) not transferred to the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable; (iii) not the Professional Fee Account, and (iv) not Distributed to Holders of Claims on the Effective Date, (c) rights of access to all of the Debtors' books and records relating to periods ending on or before the Effective Date, and (d) the proceeds from any recovery under the D&O Liability Insurance Policies providing coverage for any Retained Causes of Action.  For the avoidance of doubt, any Assets required to be transferred to the Successful Bidder or Back-Up Bidder, if any, pursuant to Article IV.A.1 of the Plan shall not constitute Creditor Litigation Trust Assets; provided, however, that none of the Retained Causes of Action nor any privileges or books and records related thereto shall be transferred to the Buyer.

51.    **Creditor Litigation Trust Beneficiaries** means all Holders of Allowed Senior Notes Claims (excluding the Debtors' Chief Executive Officer as of the Petition Date).

52.    **Creditor Litigation Trust Beneficial Interests** means the beneficial interests in the Creditor Litigation Trust to be issued to the Creditor Litigation Trust Beneficiaries pursuant to this Plan in the same proportion that such beneficiaries hold the Allowed Senior Notes Claims as of the Distribution Record Date.

53.    **Creditor Litigation Trust Expenses** means any and all reasonable fees, costs, and expenses incurred by the Creditor Litigation Trust or the Creditor Litigation Trustee on or after the Effective Date in connection with the administration of the Creditor Litigation Trust, including without limitation administrative fees, attorneys' and other professionals' fees and expenses, compensation for the Creditor Litigation Trustee as provided in the Creditor Litigation Trust Agreement, insurance, taxes and other expenses.

54.    **Creditor Litigation Trust Initial Funding Amount** means an amount, if any, to be funded by the Ad Hoc Committee of Noteholders as determined by the Ad Hoc Committee of Noteholders and disclosed in the Plan Supplement.  For the avoidance of doubt, neither the Debtors nor the Plan Sponsor shall have any obligation to provide funding for the Creditor Litigation Trust in addition to the Senior Notes Cash Recovery.

55.    **Creditor Litigation Trustee** means the Person designated by the Ad Hoc Committee of Noteholders to serve as Trustee of the Creditor Litigation Trust, the identity of whom and the terms of his or her compensation shall be disclosed in the Plan Supplement.

56.    **D&O Liability Insurance Policies** means, collectively, all insurance policies (including any "tail policy") for which any Debtor is a named insured for current or former directors', members', managers', and officers' liability.

6

57.    **Debtor Liquidating Trust** means the trust established under the Plan in accordance with the Debtor Liquidating Trust Agreement.

58.    **Debtor Liquidating Trust Agreement** means the agreement, if any, establishing the Debtor Liquidating Trust, as drafted by the Debtors and in form and substance reasonably acceptable to the Ad Hoc Committee of Noteholders and the Plan Sponsor, to be included in the Plan Supplement.

59.    **Debtor Liquidating Trust Assets** shall consist of (a) the Debtor Liquidating Trust Initial Funding Amount and (b) all Assets not transferred to the Buyer or the Creditor Litigation Trust.

60.    **Debtor Liquidating Trust Beneficiaries** means all Holders of Allowed Claims.

61.    **Debtor Liquidating Trust Expenses** means any and all reasonable fees, costs, and expenses incurred by the Debtor Liquidating Trust or the Debtor Liquidating Trustee on or after the Effective Date in connection with the administration of the Debtor Liquidating Trust, including without limitation administrative fees, attorneys' and other professionals' fees and expenses, compensation for the Debtor Liquidating Trustee as provided in the Debtor Liquidating Trust Agreement, insurance, taxes and other expenses.

62.    **Debtor Liquidating Trust Initial Funding Amount** means, in the event the Debtor Liquidating Trust is formed, an amount to be determined by the Debtors and consented to by the Plan Sponsor and disclosed in the Plan Supplement and which shall be satisfactory to the Plan Sponsor and the Ad Hoc Committee of Noteholders, in the event the Debtor Liquidating Trust is formed.

63.    **Debtor Liquidating Trustee** means the Person designated by the Debtors to serve as Trustee of the Debtor Liquidating Trust, the identity of whom and the terms of his or her compensation shall be disclosed in the Plan Supplement and shall be satisfactory to the Plan Sponsor and the Ad Hoc Committee of Noteholders.

64.    **Debtors** means Nogin, Inc., Nogin Commerce, Inc., and Native Brands Group LLC, the debtors and debtors in possession in the Chapter 11 Cases.

65.    **Definitive Documents** shall have the meaning ascribed to such term in the Restructuring Support Agreement.

66.    **DIP Claims** means the DIP Obligations.

67.    **DIP Credit Agreement** means that certain *Superpriority Secured Priming Debtor-in-Possession Credit Agreement* (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof), dated as of December 7, 2023, which has been, or will be, approved by the Bankruptcy Court pursuant to the DIP Orders.

68.    **DIP Credit Agreement Documents** means the DIP Credit Agreement and all other agreements, documents, instruments and amendments related thereto, including the DIP Orders and any guaranty agreements, pledge and collateral agreements, UCC financing statements or

7

other perfection documents, intercreditor agreements, subordination agreements, fee letters, and any other security agreements.

69.    **DIP Lender** means BRF Finance Co., LLC.

70.    **DIP Loan** means the loans incurred under the DIP Credit Agreement in an aggregate principal amount of up to $24,700,000, on the terms and conditions set forth in the DIP Orders by and among the Debtors and the DIP Lender.

71.    **DIP Obligations** means the "DIP Obligations" as defined in the DIP Orders.

72.    **DIP Orders** means the Interim DIP Orders and Final DIP Order.

73.    **Disallowed** means any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is scheduled at zero or as contingent, disputed, or unliquidated on the Schedules and as to which a Claims Bar Date has been established but for which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Claims Bar Date Order, or otherwise deemed timely filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Claims Bar Date has been established but for which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Claims Bar Date Order, or otherwise deemed timely filed under applicable law.

74.    **Disclosure Statement** means the disclosure statement filed by the Debtors in support of the Plan, as amended, supplemented, or modified from time to time, and including all annexes and appendices thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

75.    **Disputed** means, with respect to a Claim, a Claim that is not yet Allowed or Disallowed.

76.    **Disputed Claims Reserve** means an amount of Cash which may be retained for the benefit of the Holders of Disputed Claims and agreed to by the Plan Sponsor, which shall be in an amount equal to the Distributions, if any, such Holders of Disputed Claims would be entitled to receive on the applicable Distribution Date if such Disputed Claims were Allowed in their full amounts on such date.  The Disputed Claims Reserve shall include any amounts sufficient to address any Claims subject to Article VII.E, which are entitled to receive a Distribution under this Plan.  Such Cash may be held in a general account and is not required to be in a segregated account.

77.    **Distribution** means payment or distribution of consideration to Holders of Allowed Claims pursuant to the Plan.

78.    **Distribution Agent** means, with respect to any Distributions to Holders of Allowed Claims in accordance with the Plan (except with respect to Holders of Allowed Professional Fees Claims, which shall be addressed under the Professional Fee Escrow Agreement and disbursed as and when due by the Professional Fee Escrow Agent) (i) on the Effective Date, the Debtors or their designee; or (ii) after the Effective Date, (a) with respect to the Debtor Liquidating Trust, the

8

Debtor Liquidating Trustee or its designee, (b) with respect to the Post-Effective Date Debtor(s), the Plan Administrator or its designee, and (c) with respect to the Creditor Litigation Trust, the Creditor Litigation Trustee or its designee.

79.    **Distribution Date** means the Effective Date (or as soon as practicable thereafter) and with respect to any post-Effective Date Distributions, such date as determined by the Creditor Litigation Trustee, the Debtor Liquidating Trustee or Plan Administrator, as applicable.

80.    **Distribution Record Date** means the Confirmation Date or such later date as may be agreed to by the Debtors, the Ad Hoc Committee of Noteholders and the Indenture Trustee.

81.    **DTC** means The Depository Trust Company, a limited-purpose trust company organized under the New York State Banking Law.

82.    **Effective Date** means the date on which all conditions to the effectiveness of the Plan set forth in <u>Article IX</u> have been satisfied or waived in accordance with the terms of the Plan.

83.    **Entity** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

84.    **Equity Interests** means any Interest in the Debtors.

85.    **Equivalent Noteholder Treatment** means treatment of Senior Notes Claims equivalent to or better than the treatment provided for such claims in the Restructuring Term Sheet, inclusive of the Cash Settlement Consideration and the right to receive potential distributions from the Creditor Litigation Trust.

86.    **Estate** means the estate of a Debtor created pursuant to section 541 of the Bankruptcy Code.

87.    **Excluded Liabilities** shall have the meaning ascribed to the term in the Sale Transaction Documents.

88.    **Exculpated Parties** means, collectively, each of the following in their capacity as such, (i) the Debtors; (ii) Vladimir Kasparov, in his capacity as Chief Restructuring Officer; (iii) Robin Chiu, in her capacity as Deputy Chief Restructuring Officer; (iv) the Creditors' Committee and each member thereof (solely in its capacity as such); (v) each individual who sat on the Creditors' Committee on behalf of a member (solely in their capacity as such); (vi) the Debtors' directors, officers, and managers who served during any time between the Petition Date and the Effective Date of the Plan; and (vii) all professionals retained by the Debtors or the Creditors' Committee in the Chapter 11 Cases.

89.    **Equity Purchase Agreement** means the purchase agreement for the Reorganized Equity Interests.

90.    **Equity Sale Transaction** means the sale of the Reorganized Equity Interests to the Buyer in accordance with the terms of the Equity Sale Transaction Documents.

9

91.    **Equity Sale Transaction Documents** means the Equity Purchase Agreement and any and all related agreements and schedules in connection therewith.

92.    **Excess Recovery** means, if the amount of the Senior Notes Recovery is greater than the amount of Allowed Senior Notes Claims, with interest to the extent allowed by the Bankruptcy Code, the amount by which the Senior Notes Recovery exceeds the amount of Allowed Senior Notes Claims.

93.    **Executory Contract** means a contract to which a Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

94.    **Final DIP Order** means the order approving the DIP Motion on a final basis.

95.    **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; *provided, that*, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

96.    **First Interim DIP Order** means that order entered at Docket No. 59 approving, on an interim basis, the DIP Motion.

97.    **General Unsecured Claim** means any Claim as of the Petition Date that is neither a Secured Claim nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

98.    **Governmental Unit** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

99.    **Holder** means an Entity holding a Claim or an Interest, as applicable, solely in its capacity as such.

100.    **Impaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

101.    **Indenture** means that certain *Convertible Notes Indenture*, dated as of August 26, 2022, by and among the Debtors, as issuers or guarantors, as applicable and named therein, and U.S. Bank, National Association, as trustee (as amended, supplemented, or superseded from time to time).

10

102.     **Indenture Trustee Fees and Expenses** means the reasonable and documented fees and expenses of the Indenture Trustee (including, but not limited to, the fees and expenses of the Indenture Trustee's counsel, agents, and advisors (whether engaged individually or jointly with the Ad Hoc Committee of Noteholders)).

103.     **Indenture Trustee** means U.S. Bank Trust Company, National Association, the indenture trustee appointed under the Indenture in respect of the Senior Notes.

104.     **Insider** has the meaning ascribed to such term set forth in Bankruptcy Code section 101.

105.     **Interest** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code.

106.     **Interim DIP Orders** means the First and Second Interim DIP Orders entered at Docket Nos. 59 and 185, respectively, approving, on an interim basis, the DIP Motion.

107.     **IRS** means the Internal Revenue Service.

108.     **Insurance Policies** means collectively, all insurance policies, issued at any time, under which a Debtor is an insured party (including all related agreements, documents, and instruments), including, but not limited to, any D&O Liability Insurance Policies.

109.     **Joint Ventures** means Bicoastal Alliance, LLC, IPCO Holdings LLC, and ModCloth Partners, LLC.

110.     **Judicial Code** means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

111.     **Lien** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

112.     **List of Assumed Contracts** means the list of Executory Contracts and Unexpired Leases to be assumed and assigned in connection with a Sale Transaction consummated pursuant to the Plan, to be included in the Plan Supplement.

113.     **Net Cash Proceeds** means (i) Sale Transaction Proceeds, less (ii) Cash retained (a) to pay Holders of Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, (b) for the Disputed Claims Reserve (if any) established in regard to any of the foregoing types of Claims, and (c) for the Debtor Liquidating Trust Initial Funding Amount or the Post-Effective Date Debtor Initial funding Amount, as applicable.

114.     **Notice of Auction Results** means the notice setting forth the results of the Auction, if any.

115.    **Other Secured Claims** mean all Secured Claims, other than the Senior Notes Claims.

116.    **Person** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

117.    **Petition Date** means December 5, 2023.

118.    **Plan** means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code, and the terms hereof.

119.    **Plan Administrator** means the Person designated by the Debtors to serve as Plan Administrator, the identity of whom and the terms of his or her compensation shall be disclosed in the Plan Supplement and shall be satisfactory to the Plan Sponsor and the Ad Hoc Committee of Noteholders.

120.    **Plan Administrator Agreement** means the agreement between the Debtors and the Plan Administrator, as drafted by the Debtors and in form and substance reasonably acceptable to the Ad Hoc Committee of Noteholders and the Plan Sponsor, to be included in the Plan Supplement.

121.    **Plan Administrator Expenses** means any and all reasonable fees, costs, and expenses incurred by the Plan Administrator on or after the Effective Date in connection with the administration of the Plan, including without limitation administrative fees, attorneys' and other professionals' fees and expenses, compensation for the Plan Administrator as provided in the Plan Administrator Agreement, insurance, taxes and other expenses.

122.    **Plan Sponsor** means B. Riley Principal Investments, LLC.

123.    **Plan Sponsor Excusal Condition** has the meaning set forth in the Restructuring Support Agreement.

124.    **Plan Supplement** means a supplemental appendix to the Plan containing, among other things, forms of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court in one or more filings, including, but not limited to, the following: (i) the Equity Purchase Agreement or Asset Purchase Agreement, as applicable, and any necessary documentation related to the Sale Transaction; (ii) the List of Assumed Contracts; (iii) the list of Retained Causes of Action; (iv) the identity and terms of compensation of the Creditor Litigation Trustee; (v) the Creditor Litigation Trust Agreement; (vi) the identity and terms of compensation of the Debtor Liquidating Trustee or the Plan Administrator, as applicable; (vii) the Debtor Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable, (viii) the Restructuring Steps Memorandum; and (ix) the Transaction Identification Notice; *provided, that*, through the Effective Date, the Debtors shall have the right to amend the documents contained in the Plan Supplement with the consent of the Ad Hoc Committee of Noteholders and the Plan Sponsor in accordance with the terms of the Plan and to the extent provided in the RSA, including pursuant to Article X of this Plan.

125. **Post-Effective Date Debtor** means Nogin, Inc., from and after the Effective Date, in the event that Reorganized Nogin's Reorganized Equity Interests are not purchased, or if Nogin Inc.'s Assets are purchased, pursuant to the Sale Transaction Documents.

126. **Post-Effective Date Debtors** means one or more of the Debtors, from and after the Effective Date, in the event that such Debtors' Assets are sold pursuant to an Asset Sale Transaction, or their Reorganized Equity Interests are not purchased.

127. **Post-Effective Date Assets** shall consist of (a) the Post-Effective Date Debtor Initial Funding Amount and (b) all Assets not transferred to the Buyer or the Creditor Litigation Trust, in the event a Plan Administrator is appointed.

128. **Post-Effective Date Debtor Initial Funding Amount** means, in the event a Plan Administrator is appointed, an amount to be determined by the Debtors and consented to by the Plan Sponsor and disclosed in the Plan Supplement and which shall be satisfactory to the Plan Sponsor and the Ad Hoc Committee of Noteholders.

129. **Prerequisite Condition** shall have the meaning set forth in Article IX.A.

130. **Priority Non-Tax Claim** means any Claim other than an Administrative Claim or a Priority Tax Claim that is entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

131. **Priority Tax Claim** means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

132. **Pro Rata** means, as applicable, the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in the group of Classes entitled to share in the same recovery as such Class under the Plan. For the avoidance of doubt, as applied to the Allowed Senior Notes Claims, Pro Rata means the same proportion that the beneficial holders of such Allowed Senior Notes Claim held the Allowed Senior Notes Claims as of the Distribution Record Date (excluding the Debtors' Chief Executive Officer as of the Petition Date).

133. **Professional Fee Account** means a segregated escrow account established and funded pursuant to Article II.B.2.

134. **Professional Fee Escrow Agent** means the escrow agent for the Professional Fee Account.

135. **Professional Fee Escrow Agreement** means the agreement regarding the Professional Fee Account.

136. **Professional Fee Claims** means all Claims for Professional Fees incurred on or after the Petition Date through the Effective Date.

13

137.    **Professional Fee Claims Estimate** means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Article II.B.3.

138.    **Professional Fees** means fees and expenses (including transaction and success fees) incurred by an Entity employed by the Debtors or Creditors' Committee pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

139.    **Proof of Claim** means a proof of Claim filed in the Chapter 11 Cases.

140.    **Reinstate, Reinstated, or Reinstatement** means to render a Claim Unimpaired under the Plan.

141.    **Related Party** means with respect to any Released Party, such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, all of its and their respective current and former officers, directors, managers, committee members, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals or advisors, and such Persons' respective heirs, executors, estates, servants and nominees.

142.    **Released Parties** means (i) the Debtors and their Estates; (ii) the Post-Effective Date Debtor(s); (iii) Reorganized Debtors, (iv) B. Riley Principal Investments, LLC and its Affiliates, (v) Bluestar Alliance, (vi) the Consenting Noteholders and any other direct or beneficial holder of the Senior Notes (except the Debtors' Chief Executive Officer holding Senior Notes), (vii) the Indenture Trustee in its capacity as the Indenture Trustee for the Senior Notes and its counsel, Shipman & Goodwin LLP, (viii), Creditor Litigation Trust, (ix) Creditor Litigation Trustee, (x) Debtor Liquidating Trust, (xi) Debtor Liquidating Trustee (xii), Richards, Layton & Finger, P.A., (xiii) Livingstone Partners, LLC, (xiv) Triple P RTS, LLC, (xv) Vladimir Kasparov, in his capacity as Chief Restructuring Officer, (xvi) Robin Chiu, in her capacity as Deputy Chief Restructuring Officer, (xvii) Donlin, Recano & Company, Inc., (xviii) the Creditors' Committee and each member thereof (solely in their capacity as such), (xix) Morris James LLP, (xx) Lowenstein Sandler LLP, (xxi) Dundon Advisers LLC and (xxii) the Related Parties of the foregoing (except for the Debtors); *provided, however, that*, notwithstanding the foregoing, no current or former Affiliate, or Insider of the Debtors will be a Released Party unless consented to in writing by the Required Consenting Noteholders, and *provided further, however, that* the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors and the other Persons specifically named in this definition shall be Released Parties. Additionally, notwithstanding anything contained herein to the contrary, no current or former Affiliate or Insider of the Debtors may become a Released Party unless consented to in writing by the Required Consenting Noteholders if such status as a Released Party is solely due to its being a Related Party of the Reorganized Debtors.

143.    **Releasing Parties** means, collectively, (i) the holders of all Claims that are Unimpaired under the Plan and have not formally or informally objected in writing to the Plan, (ii)

14

B. Riley Principal Investments, LLC and its Affiliates, (iii) Bluestar Alliance, (iv) the Consenting Noteholders, (v) the Indenture Trustee in its capacity as the Indenture Trustee for the Senior Notes, (vi) Creditor Litigation Trust, (vii) Creditor Litigation Trustee, (viii) Debtor Liquidating Trust, (ix) Debtor Liquidating Trustee, (x) the Senior Noteholders who are not Consenting Noteholders that (a) vote to accept the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan, (b) vote to reject the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan, or (c) abstain from voting on the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan or (xi) an Entity in a voting class whose solicitation package was returned as undeliverable; *provided, however,* that in the event any Senior Noteholder that is not a Consenting Noteholder elects to opt out of the Releases by Releasing Parties, such opt-out is only effective as to the Senior Noteholder that elects to opt-out, and any Senior Noteholder that is not a Consenting Noteholder that has affirmatively elected to opt out of the Releases by Releasing Parties shall otherwise be unaffected by the Indenture Trustee being a Releasing Party; *provided, further, however* that any releases provided by the Creditor Litigation Trust, the Creditor Litigation Trustee or any direct or beneficial holder of the Senior Notes shall not be with respect to, and shall have no adverse effect on their rights to prosecute, any Retained Causes of Action transferred to the Creditor Litigation Trust or any direct claims which a direct or beneficial holder of the Senior Notes may have against an Insider or Affiliate of the Debtors who is not a Released Party. For the avoidance of doubt, the Consenting Noteholders shall be deemed to have provided the Releases by Releasing Parties in accordance with the RSA notwithstanding any Consenting Noteholder's affirmative opt-out on the ballot to solicit acceptances of the Plan.

144. **Reorganized Equity Interests** means the Interests in the Reorganized Debtors.

145. **Reorganized Debtors** means, upon consummation of the Equity Sale Transaction on the Effective Date of the Plan, Nogin Commerce, Inc., and Native Brands Group LLC, each as reorganized pursuant to and under the Plan; provided that if the Buyer in an Alternative Restructuring purchases the Reorganized Equity Interests in Reorganized Nogin, then for purposes of the Plan, the term Reorganized Debtors shall also encompass Reorganized Nogin.

146. **Reorganized Nogin** means Nogin, Inc. in the event that the Buyer in an Alternative Restructuring purchases the Reorganized Equity Interests of Nogin, Inc. issued pursuant to and under the Plan.

147. **Required Consenting Noteholders** means, as of the relevant date, Consenting Noteholders holding at least two-thirds (66 2/3%) of the aggregate principal amount of the Senior Notes Claims and over fifty percent (50%) in number of the aggregate total number of Senior Notes Claims.

148. **Restructuring Support Agreement** means that certain Restructuring Support Agreement, dated November 16, 2023, by and between the Debtors, the Plan Sponsor, and the Consenting Noteholders.

149. **Restructuring Term Sheet** means that certain term sheet attached to the Restructuring Support Agreement as **Exhibit B**.

15

150.    **Restructuring Steps Memorandum** means the memorandum to be included in the Plan Supplement that identifies the transaction steps necessary to consummate the Sale Transaction.

151.    **Restructuring Transactions** shall have the meaning set forth in <u>Article IV.K</u>.

152.    **Retained Causes of Action** means all claims and causes of action belonging to the Debtors, including, but not limited to, any and all claims and causes of action against their Insiders and Affiliates (and Related Parties of each, unless otherwise released herein) and any Avoidance Actions not sold pursuant to the Sale Transaction Documents.  For the avoidance of doubt, the Retained Causes of Action shall not include the Causes of Action sold pursuant to the applicable Sale Transaction Document; *provided, however*, that, except to the extent expressly released under the Plan, all claims and causes of action against the Debtors' Insiders and Affiliates (including, but not limited to, any Avoidance Actions against them) shall not be sold pursuant to the applicable Sale Transaction Documents, but shall be retained by the Debtors, and on the Effective Date, shall vest in the Creditor Litigation Trust.

153.    **Sale Order** means any order of the Court approving the sale of substantially all of the Debtors' Assets.

154.    **Sale Transaction** means a sale consummated pursuant to an Equity Sale Transaction or Asset Sale Transaction, as applicable.

155.    **Sale Transaction Documents** means, as applicable the Equity Purchase Agreement or Asset Purchase Agreement, and any and all related agreements and schedules contemplated thereby.

156.    **Sale Transaction Proceeds** means the net proceeds of any Equity Sale Transaction or Asset Sale Transaction, as applicable, which, in an Alternative Restructuring must include cash proceeds or other consideration sufficient to satisfy all outstanding DIP Obligations, and which shall be immediately applied on the Effective Date to indefeasibly pay in full in cash all outstanding DIP Obligations (unless otherwise consented to by the DIP Agent).

157.    **Schedules** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may be amended, supplemented, or modified from time to time.

158.    **Second Interim DIP Order** means that order entered at Docket No. 185 approving, on an interim basis, the DIP Motion.

159.    **Secured Claim** means a Claim (a) secured by a Lien on a Debtor's interest in property to the extent of the value of such interest as (i) set forth in the Plan, (ii) agreed to by the Holder of such Claim and the applicable Debtor, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

16

160.    **Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

161.    **Security** shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

162.    **Senior Noteholders** means holders of the Senior Notes and the Senior Notes Claims.

163.    **Senior Notes** means the 7.00% Convertible Senior Notes due 2026 issued pursuant to the Indenture.

164.    **Senior Notes Cash Recovery** means the greater of the (a) Cash Settlement Consideration or (b) Net Cash Proceeds from an Alternative Restructuring.

165.    **Senior Notes Claims** means claims related to the Senior Notes arising under the Indenture in the aggregate amount of no less than $67,856,181, which amount includes accrued but unpaid interest through the Petition Date.

166.    **Senior Notes Recovery** means the (a) Senior Notes Cash Recovery and (b) the Creditor Litigation Trust Beneficial Interests.

167.    **Equity Purchase Agreement** means an agreement to purchase the Reorganized Equity Interests in the Reorganized Debtors, as contemplated under the Bidding Procedures.

168.    **Subsequent Condition** shall have the meaning set forth in Article IX.A.

169.    **Successful Bid** shall have the meaning set forth in the Bidding Procedures.

170.    **Successful Bidder** shall have the meaning set forth in the Bidding Procedures.

171.    **Transaction Identification Notice** means the notice to be included in the Plan Supplement that identifies whether the Buyer will consummate an Equity Sale Transaction or Asset Sale Transaction, and whether the Debtor Liquidating Trust will be formed or a Plan Administrator will be appointed to carry out the duties ascribed thereto, as applicable, in accordance with the Plan.

172.    **U.S. Trustee** means the Office of the United States Trustee for the District of Delaware.

173.    **Unexpired Lease** means a lease to which any of the Debtors are a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

174.    **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

B.     *Rules of Interpretation*

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Articles" are references to sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.     *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan is otherwise to occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, that*, company governance matters relating to the Debtors shall be governed by the laws of the state of their applicable formation.

E.     *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Reference to the Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors shall mean the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), and/or the Debtor Liquidating Trust, to the extent the context requires.

18

G.    *Controlling Document*

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; *provided, however, that*, in the event of a conflict between the Confirmation Order and any of the Plan and the Plan Supplement, the Confirmation Order shall govern and control in all respects.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

A.    *Administrative Claims*

Except with respect to Professional Fee Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash, or otherwise receive treatment consistent with the provisions of the Bankruptcy Code (i) on the Effective Date, if such Administrative Claim is Allowed as of the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, then within thirty (30) calendar days after the date such Administrative Claim is Allowed; *provided, that*, if an Allowed Administrative Claim arises from liabilities incurred by the Debtors' Estates in the ordinary course of business after the Petition Date, such Claim shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such Claim in the ordinary course.

Requests for payment of Administrative Claims must be filed and served on (i) the Debtor Liquidating Trustee or the Post-Effective Date Debtor(s), as applicable, and (ii) Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date; *provided that* the Administrative Claims Bar Date does not apply to Administrative Claims arising in the ordinary course of business as conducted prior to the Petition Date.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, THE POST-EFFECTIVE DATE DEBTOR(S), THE BUYER, THE CREDITOR LITIGATION TRUST, THE CREDITOR LITIGATION TRUSTEE, THE DEBTOR LIQUIDATING TRUST, THE DEBTOR LIQUIDATING TRUSTEE OR THE ASSETS OR PROPERTY OF ANY OF THE**

19

**FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DISCHARGED AS OF THE EFFECTIVE DATE.**

B.     *Professional Fee Claims*

1.     Final Fee Applications

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court no later than the first Business Day that is forty-five (45) calendar days after the Effective Date unless otherwise ordered by the Bankruptcy Court. Objections to any Professional Fee Claim must be filed and served on counsel to the Debtors, the U.S. Trustee, and the Holder of such Professional Fee Claim no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Professional Fee Claim).

2.     Professional Fee Account

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Account with Cash equal to the Professional Fee Claims Estimate prior to making any Distributions under the Plan. No Liens, Claims, or Interests shall encumber the Professional Fee Account in any way, and such account shall not be subject to the control of any party other than the Professional Fee Escrow Agent. The Professional Fee Account (including funds held in the Professional Fee Account) (i) shall not be and shall not be deemed property of the Debtors, the Estates, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, or the Debtor Liquidating Trust and (ii) shall be held in trust for, and exclusively available for, the payment of Professional Fees as they become Allowed and payable; *provided, that*, funds remaining in the Professional Fee Account after all Allowed Professional Fee Claims have been irrevocably paid in full, as acknowledged in writing by all applicable Professionals, shall promptly be transferred to the Plan Sponsor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Allowed Professional Fee Claims shall be paid in Cash by the Professional Fee Escrow Agent to such Professionals from funds held in the Professional Fee Account when such Claims are Allowed by an order of the Bankruptcy Court; *provided, that*, Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Account and, to the extent any Allowed Professional Fee Claims remain unpaid after exhaustion of the Professional Fee Account, such remaining Allowed Professional Fee Claims shall be paid by the Debtor Liquidating Trust or the Post-Effective Date Debtor, as applicable.

3.     Professional Fee Claims Estimate

No later than five (5) Business Days prior to the Effective Date, Holders of Professional Fee Claims shall provide a reasonable, good faith estimate of unpaid Professional Fee Claims incurred in rendering services to the Debtors on or before the Effective Date, including any fees and expenses projected to be outstanding as of the Effective Date, and the Debtors shall fund the Professional Fee Account held by the Professional Fee Escrow Agent with such estimated amounts for the benefit of the Holders of the Professional Fee Claims until the fee applications related

20

thereto are resolved by Final Order or agreement of the parties; *provided, that*, such estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of filed Professional Fee Claims. If a Holder of a Professional Fee Claim does not provide such an estimate, the Debtors may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such Holder of a Professional Fee Claim. When all such Allowed Professional Fee Claims have been paid in full, as acknowledged in writing by all applicable Professionals, any remaining amount in the Professional Fee Account shall promptly be transferred to the Plan Sponsor, without requiring any further action or order of the Bankruptcy Court.

4.    <u>Post-Effective Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Distribution Agent shall, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan. Upon the Effective Date, any requirement that professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee or the Debtor Liquidating Trustee, as applicable, may employ any professional in the ordinary course of business without the need for any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent that a Priority Tax Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash, or otherwise receive treatment consistent with the provisions of the Bankruptcy Code (i) on the Effective Date, if such Priority Tax Claim is Allowed as of the Effective Date (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter) or (ii) if such Priority Tax Claim is not Allowed as of the Effective Date, within thirty (30) calendar days after the date such Priority Tax Claim is Allowed.

D.    *DIP Claims*

All DIP Claims (including, for the avoidance of doubt, the Bridge Loan Claims, as rolled-up under the DIP Orders) shall be deemed Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Loan on such date, (b) all interest accrued and unpaid thereon to the date of payment, and (c) any and all accrued and unpaid fees, expenses and indemnification obligations or other obligations of any kind payable under the DIP Credit Agreement Documents.

To the extent the DIP Lender is the Successful Bidder, the DIP Claims shall be deemed to be fully and finally satisfied by the issuance of the Reorganized Equity Interests to the DIP Lender or an Affiliate thereof pursuant to the Equity Sale Transaction Documents and this Plan. In the

event that the DIP Lender is not the Successful Bidder, except to the extent that the DIP Lender, as the sole Holder of an Allowed DIP Claim, agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim, the DIP Lender shall receive indefeasible payment in full in Cash of such Holder's Allowed DIP Claim on the Effective Date, which Allowed amount shall not be subject to setoff, defense, counterclaim, recharacterization or avoidance.

Upon the indefeasible payment or satisfaction in full in Cash, or other satisfactory treatment, of the DIP Claims (other than any DIP Claims based on the Debtors' contingent obligations under the DIP Credit Agreement for which no claim has been made) in accordance with the terms of the Plan, on the Effective Date, all Liens granted to secure the Allowed DIP Claims shall be automatically terminated and of no further force and effect without any further notice to, or action, order, or approval of, the Court or any other Entity. Notwithstanding anything to the contrary herein or in the Confirmation Order, the Debtors' contingent or unliquidated obligations under the DIP Credit Agreement, to the extent not indefeasibly paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors in a manner reasonably acceptable to the DIP Lender, shall survive the Effective Date and shall not be released or discharged pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary and, on and after the Effective Date, shall be satisfied by utilizing funds in the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable.

E.    *Indenture Trustee Fees and Expenses*

On the later of the Effective Date or five (5) Business Days following the receipt of an invoice, the Distribution Agent shall pay in full in Cash any Indenture Trustee Fees and Expenses without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval. Such payments shall constitute a Distribution on account of the Allowed Senior Notes Claim. The Indenture Trustee and its advisors shall provide to counsel to the Debtors and counsel to the Buyer invoices for unpaid fees and expenses at least five (5) Business Days before, or as soon as practicable after, the Effective Date.

F.    Consenting Noteholder Group Advisors Fees and Expenses

On the later of the Effective Date or five (5) Business Days following the receipt of an invoice, the Distribution Agent shall pay in full in Cash any outstanding Consenting Noteholder Group Advisors Fees and Expenses to the extent they have not been paid pursuant to the DIP Orders without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval. Such payments shall constitute a Distribution on account of the Allowed Senior Notes Claim. Each of the Consenting Noteholder Group Advisors shall

22

provide to counsel to the Debtors and counsel to the Buyer invoices for unpaid fees and expenses at least five (5) Business Days before, or as soon as practicable after, the Effective Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

All Claims and Interests, except for Claims addressed in <u>Article II</u>, are classified as set forth in this <u>Article III</u>. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.    <u>Class Identification</u>

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Senior Notes Claims | Impaired | YES |
| 4 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 5 | Intercompany Claims | Unimpaired | No (Presumed to Accept or Deemed to Reject) |
| 6 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

B.    *Treatment of Claims and Interests*[2]

1.    <u>Class 1 – Priority Non-Tax Claims</u>

a.    *Classification*:  Class 1 consists of all Priority Non-Tax Claims.

b.    *Treatment*:  Except to the extent a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the later of (i) the Effective

---

[2]    For the avoidance of doubt, on the Effective Date, the treatment proposed herein shall be binding on all Holders of Claims and/or Interests, regardless of whether such Holders of Claims and/or Interests vote to accept the Plan or object to the Plan or any treatment hereunder.

23

Date or (ii) the date such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash in an amount equal to the Allowed amount of such Claim.

c.   *Voting*: Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Priority Non-Tax Claims.

2.   <u>Class 2 – Other Secured Claims</u>

a.   *Classification*:  Class 2 consists of all Other Secured Claims.

b.   *Treatment*:  Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Other Secured Claim becomes Allowed, or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, at the discretion of the Distribution Agent (x) payment in full in Cash in an amount equal to the Allowed amount of such Claim; (y) such other treatment sufficient to render such Other Secured Claim Unimpaired; or (z) return of the applicable collateral or authorization of a setoff in satisfaction of the Allowed amount of such Other Secured Claim.

c.   *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Other Secured Claims.

3.   <u>Class 3 – Senior Notes Claims</u>

a.   *Classification*:  Class 3 consists of all Senior Notes Claims.

b.   *Allowance*: The Senior Notes Claims shall be Allowed in an amount of no less than $67,856,181, which amount includes accrued but unpaid interest through the Petition Date.

c.   *Treatment*: Except to the extent a Holder of an Allowed Senior Notes Claim agrees to less favorable treatment, in full and final satisfaction of their

24

Allowed Senior Notes Claims, on the Effective Date, Holders of Allowed Senior Notes Claims shall receive:

(i) In the event that the Debtors pursue the transactions contemplated by the Restructuring Support Agreement and embodied in the Restructuring Term Sheet, and the Buyer is the Plan Sponsor purchasing the Reorganized Equity Interests pursuant to an Equity Purchase Agreement, Holders of Allowed Senior Notes Claims (other than the Debtors' Chief Executive Officer as of the Petition Date) shall receive their Pro Rata share of (a) the Cash Settlement Consideration and (b) their Pro Rata share of the Creditor Litigation Trust Beneficial Interests.

(ii) In the event that the Debtors pursue an Alternative Restructuring, whether pursuant to an Equity Purchase Agreement or an Asset Purchase Agreement, whether pursuant to this Plan or a Sale Order, and the Buyer is an entity other that the Plan Sponsor, Holders of Allowed Senior Notes Claims (other than the Debtors' Chief Executive Officer as of the Petition Date) shall receive (i) the greater of their Pro Rata share of the (a) Cash Settlement Consideration or (b) Net Cash Proceeds; *provided* that if the Alternative Restructuring does not provide Equivalent Noteholder Treatment, the Restructuring Support Agreement has not been terminated pursuant to Section 13.01(g), (j) or (a) (resulting from a material breach by the Required Consenting Noteholders or the Ad Hoc Committee of Noteholders acting at the direction of the Required Consenting Noteholders) thereof and the Plan Sponsor Excusal Condition has not been satisfied, then, within 14 days after consummation of such Alternative Restructuring, the Plan Sponsor shall pay the Cash Settlement Differential to the Indenture Trustee for the benefit of the Holders of Allowed Senior Notes Claims (other than the Debtors' Chief Executive Officer as of the Petition Date); and (ii) their Pro Rata share of the Creditor Litigation Trust Beneficial Interests.

(iii) In accordance with the Restructuring Support Agreement, (i) the Debtors' Chief Executive Officer as of the Petition Date shall receive no recovery on account of his Senior Notes Claims and (ii) as a class, Holders of Allowed Senior Notes Claims in Class 3 shall only be entitled to receive the full amount of the Senior Notes Claims, with interest to the extent permitted under the Bankruptcy Code, in accordance with the absolute priority rule. To the extent, if any, that the Senior Notes Recovery exceeds the amount of the Allowed Senior Notes Claims, with interest as allowed by the Bankruptcy Code, the Excess Recovery, if any, shall be distributed on a Pro Rata basis to the Holders of Allowed General Unsecured Claims. To the extent not otherwise paid, Holders of Allowed Senior

25

Notes Claims shall receive an amount equal to the outstanding reasonable and documented Indenture Trustee Fees and Expenses and the outstanding reasonable and documented Consenting Noteholder Group Advisors Fees and Expenses, which amount will be paid to the Indenture Trustee or the applicable Consenting Noteholder Group Advisor on the Effective Date in cash as provided in Articles II.E and II.F hereof.

d.    *Voting*:  Class 3 is Impaired.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.    Class 4 – General Unsecured Claims

a.    *Classification*:  Class 4 consists of all General Unsecured Claims.

b.    *Treatment*:  On the Effective Date, (i) each Allowed General Unsecured Claim will be released and extinguished, and (ii) each holder of an Allowed General Unsecured Claim shall not receive any distribution on account of its General Unsecured Claim, unless the Senior Notes Recovery exceeds the Allowed Senior Notes Claims, which, in such circumstance, Holders of Allowed General Unsecured Claims would receive, on a Pro Rata basis, their share of the Excess Recovery, if any.

c.    *Voting*:  Class 4 is Impaired.  Holders of General Unsecured Claims in Class 4 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Intercompany Claims

a.    *Classification*:  Class 5 consists of all Intercompany Claims.

b.    *Treatment*:  Intercompany Claims shall be reinstated, cancelled, compromised, or provided such other treatment as determined by the Reorganized Debtors or the Buyer, as applicable.

c.    *Voting*:  Class 5 is Impaired or Unimpaired, as applicable.  The holders of Allowed Intercompany Claims are either (i) deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan or (ii) conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.  The votes of such holders shall not be solicited with respect to such Allowed Intercompany Claims.

6.    Class 6 – Existing Equity Interests

a.    *Classification*:  Class 6 consists of all Equity Interests.

26

      b.     *Treatment*:  On the Effective Date, Equity Interests shall be cancelled, released, and extinguished, and be of no further force or effect, whether surrendered for cancellation or otherwise; *provided, however, that*, in the event the Debtors consummate an Equity Sale Transaction pursuant to an Equity Purchase Agreement, the Reorganized Debtors' corporate structure shall be reflected in the Restructuring Steps Memorandum and shall not otherwise be adversely affected by the Plan.

      c.     *Voting*:  Class 6 is Impaired under the Plan.  Holders of Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors', Reorganized Debtors', Post-Effective Date Debtor(s)', Creditor Litigation Trustee's, or Debtor Liquidating Trustee's, as applicable, rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims.  Nothing herein shall be deemed to be a waiver or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Plan.

D.     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class.

E.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Unimpaired or Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.     *Plan Implementation*

1.     As set forth in the Disclosure Statement, the Debtors, with the assistance of Livingstone Partners, LLC, have conducted a marketing and sale process in accordance with the Bidding Procedures.  Pursuant to the Bidding Procedures, the Debtors have designated the Successful Bidder and Back-Up Bidder, if any.  The Sale Transaction shall be consummated with the Successful Bidder on the Effective Date, or as otherwise set forth in a Sale Order (if any).  If the applicable Sale Transaction Documents with the Successful Bidder are terminated in accordance with their terms, the Sale Transaction shall be consummated with the Back-Up Bidder,

if any, pursuant to the terms of its applicable Sale Transaction Documents upon the filing of a notice with the Bankruptcy Court (and without the need for further Bankruptcy Court approval).

2.    On the Effective Date, or as otherwise provided for in a Sale Order (if any), the Sale Transaction, or the proceeds derived from a Sale Transaction consummated under a Sale Order (if any), as applicable, shall be implemented in the following sequence:

    a.    If the Plan Sponsor (or its designee) is the Buyer pursuant to an Equity Purchase Agreement, following the discharge pursuant to section 1141 of the Bankruptcy Code of the Debtors, as follows:

        (i)    First, pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, (a) the Creditor Litigation Trust Assets shall be transferred to, and vest in, the Creditor Litigation Trust free and clear of all Liens, Claims, charges, interests, or other encumbrances but subject to the Creditor Litigation Trust's obligations under the Plan; and (b) the Post-Effective Date Assets shall vest in the Post-Effective Date Debtor;

        (ii)    Second, (i) the Equity Interests of all of the Debtors will be cancelled, and (ii) pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, (a) 100% of the Reorganized Equity Interests shall be issued or transferred to, as applicable, and vest free and clear of all Liens, Claims, charges, interests, or other encumbrances in the Plan Sponsor (or its designee) in accordance with the applicable Sale Transaction Documents and the Restructuring Steps Memorandum, and (b) the Plan Administrator shall be deemed to hold one share of common equity in the Post-Effective Date Debtor solely for the benefit of Holders of Allowed Claims; provided that the Plan Administrator shall not be entitled to receive any Distribution on account of such common equity interest; and

        (iii)    Third, the Plan Sponsor shall remit the Sale Transaction Proceeds to an account or accounts designated by the Debtors.

    b.    In an Alternative Restructuring as follows;

        (i)    First, pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, (a) the Creditor Litigation Trust Assets shall be transferred to, and vest in, the Creditor Litigation Trust free and clear of all Liens, Claims, charges, interests, or other encumbrances but subject to the Creditor Litigation Trust's obligations under the Plan and (b) the Post-Effective Date Assets shall vest in the Post-Effective Date Debtor or the Debtor Liquidating Trust Assets shall vest in the Debtor Liquidating Trust, as applicable;

28

(ii) Second, subject to the terms of the applicable Sale Transaction Documents, (i) if the Buyer consummates the Sale pursuant to an Asset Purchase Agreement, the Debtors shall consummate the Sale Transaction by, among other things, transferring the Purchased Assets to the Buyer free and clear of all Liens, Claims, Interests, charges, and other encumbrances (other than the Assumed Liabilities) pursuant to sections 363, 365, and/or section 1123 of the Bankruptcy Code, the Plan, and the Confirmation Order, or, in the alternative, as and when set forth in the applicable Sale Order, and the Post-Effective Date Assets shall vest in the Post-Effective Date Debtor(s), or (ii) if the Buyer consummates the Sale pursuant to an Equity Purchase Agreement, the Equity Interests of all of the Debtors will be cancelled, and pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, and (I) 100% of the Reorganized Equity Interests shall be issued or transferred to, as applicable, and vest free and clear of all Liens, Claims, charges, interests, or other encumbrances in the Buyer (or its designee) in accordance with the applicable Sale Transaction Documents and the Restructuring Steps Memorandum, (II) the Post-Effective Date Assets shall vest in the Post-Effective Date Debtor and (III) the Plan Administrator shall be deemed to hold one share of common equity in the Post-Effective Date Debtor solely for the benefit of Holders of Allowed Claims; provided that the Plan Administrator shall not be entitled to receive any Distribution on account of such common equity interest; *provided that* if the Buyer purchases the Reorganized Equity Interests of all of the Debtors, including Reorganized Nogin, then (I) 100% of the Reorganized Equity Interests shall be issued or transferred to, as applicable, and vest free and clear of all Liens, Claims, charges, interests, or other encumbrances in the Buyer (or its designee) in accordance with the applicable Sale Transaction Documents and the Restructuring Steps Memorandum, and (II) the Debtor Liquidating Trust Assets shall vest in the Debtor Liquidating Trust;

(iii) Third, the Buyer shall remit the Sale Transaction Proceeds to an account or accounts designated by the Debtors; and

(iv) Fourth, if (x) the Alternative Restructuring does not provide Equivalent Noteholder Treatment, (y) the Restructuring Support Agreement has not been terminated pursuant to Section 13.01(g), (j) or (a) (resulting from a material breach by the Required Consenting Noteholders or the Ad Hoc Committee of Noteholders acting at the direction of the Required Consenting Noteholders) thereof and (z) the Plan Sponsor Excusal Condition has not been satisfied, then, within 14 days after consummation of the Alternative Restructuring, the Plan Sponsor shall pay an amount equal to the Cash Settlement Differential to the Indenture Trustee for the benefit of the Holders

29

of Allowed Senior Notes Claims (other than the Debtors' Chief Executive Officer as of the Petition Date).

B.  *Liabilities, Obligations, or Claims*

All liabilities of, obligations of, or Claims against the Debtors that are Excluded Liabilities shall be transferred to the Debtor Liquidating Trust or the Plan Administrator, as applicable, to be satisfied in accordance with the Plan.

C.  *Sources of Consideration for Plan Distributions*

The Distribution Agent shall fund Distributions and satisfy Allowed Claims under the Plan using Available Cash or Net Cash Proceeds, including Sale Transaction Proceeds, and if applicable, the Cash Settlement Differential, as applicable; *provided, however, that,* any post-Effective Date obligations of the (i) Creditor Litigation Trust shall be paid by Creditor Litigation Trustee, (ii) the Debtor Liquidating Trust shall be paid by the Debtor Liquidating Trustee, and (iii) the Post-Effective Date Debtor(s) shall be paid by the Plan Administrator.  The Debtors shall make an initial distribution of Available Cash or Net Cash Proceeds on the Effective Date (or as soon thereafter as is practicable).

D.  *Reorganized Equity Interests*

To the extent the Buyer seeks to purchase Reorganized Equity Interests, the Reorganized Debtors are authorized to issue or transfer, or cause to be issued or transferred, and shall issue or transfer, as applicable, the Reorganized Equity Interests to the Buyer without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.  The Reorganized Equity Interests shall be issued or transferred, as applicable, and distributed free and clear of all Liens, Claims, and other Interests.  All of the Reorganized Equity Interests issued or transferred pursuant to the Plan shall be duly authorized, validly issued, and, as applicable, fully paid and non-assessable.

E.  *Plan Securities and Related Documentation; Exemption from Securities Laws*

The Reorganized Equity Interests issued under the Plan in connection with a Reorganization Transaction shall be exempt from registration under the Securities Act pursuant to section 1145 of the Bankruptcy Code, and such securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities. Such section 1145 exempt securities also generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

F.  *Creditor Litigation Trustee and Creditor Litigation Trust*

1.      On or prior to the Effective Date, the Creditor Litigation Trust shall be established in accordance with the Creditor Litigation Trust Agreement for the purpose of receiving and liquidating the Creditor Litigation Trust Assets, including the prosecution of the Retained Causes

30

of Action, and making Distributions to Creditor Litigation Trust Beneficiaries in accordance with the terms of the Plan and the Creditor Litigation Trust Agreement.

2.      Funding of and Transfer of Assets into the Creditor Litigation Trust.   On the Effective Date, the Debtors shall transfer the Creditor Litigation Trust Assets to the Creditor Litigation Trust, and all such assets shall vest in the Creditor Litigation Trust on such date, to be administered by the Creditor Litigation Trust, in accordance with the Plan and the Creditor Litigation Trust Agreement.   The act of transferring the Creditor Litigation Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Creditor Litigation Trust as if the asset or right was still held by the Debtors.

3.      Creditor Litigation Trust Trustee.   The Creditor Litigation Trustee shall serve as the initial trustee of the Creditor Litigation Trust and shall be identified in the Plan Supplement.   The powers, rights, and responsibilities of the Creditor Litigation Trustee shall be as specified in the Creditor Litigation Trust Agreement and Plan.

4.      Creditor Litigation Trust Agreement.   Prior to the Effective Date, the Debtors shall file with the Bankruptcy Court a form of Creditor Litigation Trust Agreement as part of the Plan Supplement.

5.      Fees and Expenses of the Creditor Litigation Trust.   From and after the Effective Date, Creditor Litigation Trust Expenses shall be paid from the Creditor Litigation Trust Assets, in accordance with the Plan and the Creditor Litigation Trust Agreement.   The compensation of the Creditor Litigation Trustee shall be set forth in the Plan Supplement.

31

6.    <u>Tax Treatment of Creditor Litigation Trust</u>.

a.    It is intended that the Creditor Litigation Trust shall qualify as a "liquidating trust" for U.S. federal income tax purposes.  Accordingly, (i) the terms of the Creditor Litigation Trust shall be set forth in the Creditor Litigation Trust Agreement; (ii) the Creditor Litigation Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of Allowed Senior Notes Claims receiving beneficial interests in the Creditor Litigation Trust (whether Allowed on or after the Effective Date), consistent with the terms of the Plan; (iii) the Holders of Allowed Senior Notes Claims shall be treated as the beneficiaries and grantors of the Creditor Litigation Trust; (iv) the primary purpose of the Creditor Litigation Trust shall be the liquidation and distribution of the Creditor Litigation Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Allowed Senior Notes Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Creditor Litigation Trust's liquidating purpose and reasonably necessary to conserve and protect the Creditor Litigation Trust Assets and provide for the orderly liquidation thereof; (v) all parties shall report consistently with such treatment, including (A) the deemed receipt of the Creditor Litigation Trust Assets (subject to applicable liabilities and obligations) by the Holders of Allowed Senior Notes Claims, followed by (B) the deemed transfer of such assets to the Creditor Litigation Trust; (vi) all parties shall report consistently with the valuation of the Assets transferred to the Creditor Litigation Trust as determined by the Creditor Litigation Trustee; (vii) the Creditor Litigation Trustee shall be responsible for filing returns for the Creditor Litigation Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a); (viii) the Creditor Litigation Trustee shall annually provide to each Creditor Litigation Trust Beneficiary a separate statement regarding the receipts and expenditures of the Creditor Litigation Trust as relevant for U.S. federal income tax purposes; and (ix) all items of income, deductions, and credit loss of the Creditor Litigation Trust shall be allocated for federal income tax purposes to the Creditor Litigation Trust Beneficiaries in such manner as the Creditor Litigation Trustee deems reasonable and appropriate.

b.    All parties (including the Debtors, the Creditor Litigation Trust, and the Creditor Litigation Trust Beneficiaries) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.  Any taxes (including with respect to earned interest, if any) imposed on the Creditor Litigation Trust (including as a result of treatment, in whole or in part, as a disputed ownership fund or otherwise) shall be paid by the Creditor Litigation Trust.

      c.      The Creditor Litigation Trust may request, if necessary, an expedited determination of any unpaid tax liability of the Creditor Litigation Trust under Bankruptcy Code section 505(b) for all taxable periods of the Creditor Litigation Trust through the dissolution of the Creditor Litigation Trust as determined under applicable tax laws.

G.    *Debtor Liquidating Trustee and Debtor Liquidating Trust*

1.    In the event that no Post-Effective Date Debtor(s) exists on or after closing of the Sale Transaction, the following provisions shall apply.

2.    On or prior to the Effective Date, the Debtor Liquidating Trust shall be established in accordance with the Debtor Liquidating Trust Agreement for the purpose of receiving and liquidating the Debtor Liquidating Trust Assets, reviewing, objecting to, and resolving all Disputed Claims (other than Senior Notes Claims), making distributions to Holders of Allowed Claims (other than Senior Notes Claims) in accordance with the terms of the Debtor Liquidating Trust Agreement and the Plan, and otherwise implementing the Plan.

3.    <u>Funding of and Transfer of Assets into the Debtor Liquidating Trust</u>.  On the Effective Date, the Debtors shall transfer the Debtor Liquidating Trust Assets to the Debtor Liquidating Trust, and all such assets shall vest in the Debtor Liquidating Trust on such date, to be administered by the Debtor Liquidating Trust, in accordance with the Plan and the Debtor Liquidating Trust Agreement.  The act of transferring the Debtor Liquidating Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Debtor Liquidating Trust as if the asset or right was still held by the Debtors.

4.    <u>Debtor Liquidating Trust Trustee</u>.  The Debtor Liquidating Trustee shall serve as the initial trustee of the Debtor Liquidating Trust and shall be identified in the Plan Supplement. The powers, rights, and responsibilities of the Debtor Liquidating Trustee shall be as specified in the Debtor Liquidating Trust Agreement and Plan.

5.    <u>Debtor Liquidating Trust Agreement</u>.  Prior to the Effective Date, the Debtors shall file with the Bankruptcy Court a form of Debtor Liquidating Trust Agreement as part of the Plan Supplement.

6.    <u>Fees and Expenses of the Debtor Liquidating Trust</u>.  From and after the Effective Date, Debtor Liquidating Trust Expenses shall be paid from the Debtor Liquidating Trust, in accordance with the Plan and the Debtor Liquidating Trust Agreement.  The compensation of the Debtor Liquidating Trustee shall be set forth in the Plan Supplement.

7.    <u>Tax Treatment of Debtor Liquidating Trust</u>.

      a.      It is intended that the Debtor Liquidating Trust shall qualify as a "liquidating trust" for U.S. federal income tax purposes. Accordingly, (i) the terms of the Debtor Liquidating Trust shall be set forth in the Debtor Liquidating Trust Agreement; (ii) the Debtor Liquidating Trust shall be

structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of all Allowed Claims receiving beneficial interests in the Debtor Liquidating Trust (other than the Holders of Allowed Senior Notes Claims, and whether Allowed on or after the Effective Date), consistent with the terms of the Plan; (iii) the Holders of Allowed Claims (other than Holders of Allowed Senior Notes Claims) shall be treated as the beneficiaries and grantors of the Debtor Liquidating Trust; (iv) the primary purpose of the Debtor Liquidating Trust shall be the liquidation and distribution of the Debtor Liquidating Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Claims in accordance with this Plan (other than Senior Notes Claims), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Debtor Liquidating Trust's liquidating purpose and reasonably necessary to conserve and protect the Debtor Liquidating Trust Assets and provide for the orderly liquidation thereof; (v) all parties shall report consistently with such treatment, including (A) the deemed receipt of the Debtor Liquidating Trust Assets (subject to applicable liabilities and obligations) by the Holders of Allowed Claims (other than Holders of Allowed Senior Notes Claims), followed by (B) the deemed transfer of such assets to the Debtor Liquidating Trust; (vi) all parties shall report consistently with the valuation of the Assets transferred to the Debtor Liquidating Trust as determined by the Debtor Liquidating Trustee; (vii) the Debtor Liquidating Trustee shall be responsible for filing returns for the Debtor Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a); (viii) the Debtor Liquidating Trustee shall annually provide to each Debtor Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the Debtor Liquidating Trust as relevant for U.S. federal income tax purposes; and (ix) all items of income, deductions, and credit loss of the Debtor Liquidating Trust shall be allocated for federal income tax purposes to the Debtor Liquidating Trust Beneficiaries in such manner as the Debtor Liquidating Trustee deems reasonable and appropriate.

b.      All parties (including the Debtors, the Debtor Liquidating Trust, the Debtor Liquidating Trust Beneficiaries,) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. Any taxes (including with respect to earned interest, if any) imposed on the Debtor Liquidating Trust (including as a result of treatment, in whole or in part, as a disputed ownership fund or otherwise) shall be paid by the Debtor Liquidating Trust.

c.      The Debtor Liquidating Trust may request, if necessary, an expedited determination of any unpaid tax liability of the Debtor Liquidating Trust under Bankruptcy Code section 505(b) for all taxable periods of the Debtor

Liquidating Trust through the dissolution of the Debtor Liquidating Trust as determined under applicable tax laws.

H.    *Plan Administrator*

1.    In the event that one or more Post-Effective Date Debtor(s) exists on or after closing of the Sale Transaction, the following provisions shall apply.

2.    On or prior to the Effective Date, the Plan Administrator shall be appointed and thereafter serve in accordance with this Plan and the Plan Administrator Agreement for the purpose of liquidating the Post-Effective Date Assets, reviewing, objecting to, and resolving all Disputed Claims (other than Senior Notes Claims), making distributions to Holders of Allowed Claims (other than Senior Notes Claims) in accordance with the terms of this Plan and the Plan Administrator Agreement, and otherwise implementing the Plan.

3.    <u>Funding of and Transfer of Assets into the Post-Effective Date Debtor(s)</u>.  On the Effective Date, the Debtors shall transfer the Post-Effective Date Assets to the Post-Effective Date Debtor(s), and all such assets shall vest in the Post-Effective Date Debtor(s) on such date, to be administered by the Plan Administrator, in accordance with the Plan and the Plan Administrator Agreement.  The act of transferring the Post-Effective Date Assets, as authorized by the Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Plan Administrator Trust as if the asset or right was still held by the Debtors.

4.    <u>Plan Administrator</u>.  The Plan Administrator shall be identified in the Plan Supplement.  The powers, rights, and responsibilities of the Plan Administrator shall be as specified in the Plan Administrator Agreement and Plan.

5.    <u>Plan Administrator Agreement</u>.  Prior to the Effective Date, the Debtors shall file with the Bankruptcy Court a form of Plan Administrator Agreement as part of the Plan Supplement.

6.    <u>Fees and Expenses of the Plan Administrator</u>.  From and after the Effective Date, Plan Administrator Expenses shall be paid from the Post-Effective Date Debtor(s), in accordance with the Plan and the Plan Administrator Agreement.  The compensation of the Plan Administrator shall be set forth in the Plan Supplement.

I.    *Cancellation of Existing Interests, Indebtedness, and Other Obligations*

Except for the purpose of evidencing a right to a Distribution under the Plan and except as otherwise set forth in the Plan, including with respect to Executory Contracts or Unexpired Leases that shall be assumed by the Buyer or the Reorganized Debtors, as applicable, on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to the Senior Notes, or any indebtedness or other obligations thereunder, and any Interest, and any rights of any holder in respect thereof, including the Senior Notes and the Senior Notes Indenture, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged, subject to, in the case of the

35

Senior Notes and Senior Notes Indenture, the payment of the Indenture Trustee Fees and Expenses and except with respect to such other rights of the Indenture Trustee, including indemnification rights and charging liens, that survive the termination of the Senior Notes Indenture pursuant to their terms, which shall continue in full force and effect.

Notwithstanding such cancellation and discharge, all agreements, instruments, and other documents evidencing or issued pursuant to the Senior Notes shall continue in effect to the extent necessary (i) to allow the Holders of Senior Notes Claims to receive Distributions; (ii) to allow the Creditor Litigation Trustee and Indenture Trustee to receive and make post-Effective Date Distributions or take such other action pursuant to the Plan on account of such Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the Holders of such Claims; (iii) to allow the Senior Noteholders and the Indenture Trustee to retain their respective rights and obligations vis-à-vis other Senior Noteholders, pursuant to any applicable loan documents; (iv) to preserve any rights of the Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any Distributions to the Senior Noteholders under the Senior Notes, including any rights to priority of payment and/or to exercise charging liens pursuant to the Senior Notes Indenture and enforce its rights, claims, and interests, vis-à-vis any party other than the Debtors; (v) to allow the Indenture Trustee to enforce any obligations owed to it under the Plan; (vi) to allow the Indenture Trustee to exercise rights and enforce obligations relating to the interests of the Senior Noteholders, including enforcement of any subordination agreement; (vii) to allow the Indenture Trustee to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (viii) to permit the Indenture Trustee to perform and seek compensation and reimbursement for any function necessary to effectuate the foregoing; *provided, that*, nothing in this Article IV.H shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any liability or expense to the Reorganized Debtors.

Except for the foregoing, subsequent to the performance by the Indenture Trustee of its obligations pursuant to the Plan, the Indenture Trustee and its agents shall be relieved and discharged from all further duties and responsibilities related to the Plan and the Senior Notes Indenture, except with respect to such other rights that survive the termination of the Senior Notes Indenture.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

J.      *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (i) the cancellation of the Equity Interests, (ii) the issuance of

36

the Reorganized Equity Interests, if applicable; (iii) the selection of the Creditor Litigation Trustee and the formation of the Creditor Litigation Trust and the execution and delivery thereof; (iv) the selection of the Debtor Liquidating Trustee and the formation of the Debtor Liquidating Trust and the execution and delivery thereof, or the appointment of the Plan Administrator and the execution of the Plan Administrator Agreement, as applicable; (v) consummation of the Sale Transaction, as applicable; (vi) execution of and performance under the Definitive Documents; and (vii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator,  the Creditor Litigation Trustee, the form of the Creditor Litigation Trust Agreement, the Creditor Litigation Trust, the Debtor Liquidating Trustee, the form of the Debtor Liquidating Trust Agreement, or the Debtor Liquidating Trust and any corporate or other organizational action required by the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, or the Debtor Liquidating Trust in connection with the Plan shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, or officers of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, or the Debtor Liquidating Trust.  Before, on, or after the Effective Date, as applicable, the appropriate officers of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator,  the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, or the Debtor Liquidating Trust, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan), in the name of and on behalf of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, or the Debtor Liquidating Trust, as applicable, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

K.     *Effectuating Documents; Restructuring Transactions*

Following the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, the Debtor Liquidating Trust, and the Buyer, as applicable, may take all actions as may be necessary or appropriate in their discretion to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Definitive Documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or law; (iv) the issuance of securities; and

37

(v) all other actions that the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee, the Creditor Litigation Trust, the Debtor Liquidating Trustee, the Debtor Liquidating Trust, or the Buyer determine to be necessary or appropriate, including in connection with the consummation of the Sale Transaction and making filings or recordings that may be required by applicable law in connection with the Plan, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule or the governing documents of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Buyer (collectively, the "**Restructuring Transactions**").

Each officer, manager, or member of the board of directors of the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, Creditor Litigation Trust or Debtor Liquidating Trust is (and each officer, manager, or member of the board of directors of the Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trustee and the Debtor Liquidating Trustee, as applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Plan Administrator, the Creditor Litigation Trust or the Debtor Liquidating Trust, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders, members, directors or managers of the Debtors, the Reorganized Debtors, the Creditor Litigation Trust or Debtor Liquidating Trust the Creditor Litigation Trust or the Debtor Liquidating Trust) except for those expressly required pursuant to the Plan.

The Debtors shall be authorized to implement the Sale Transaction, including the creation of the Creditor Litigation Trust and the Debtor Liquidating Trust, in the manner most tax efficient to (x) the Reorganized Debtors, (y) the Creditor Litigation Trust and (z) the Debtor Liquidating Trust, though the Debtors shall reasonably prioritize tax efficiency with respect to the Reorganized Debtors over tax efficiency with respect to the Credit Litigation Trust and the Debtor Liquidating Trust to the extent of any conflict.

All matters provided for herein involving the corporate structure of the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust, to the extent applicable, or any corporate or related action required by the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust or Debtor Liquidating Trust in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, directors or managers of the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust or Debtor Liquidating Trust and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors, Reorganized Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust or Debtor Liquidating Trust.

L.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments, or documents; (b) the creation of any Lien, mortgage, deed of trust or other security interest; (c) all sale transactions consummated by the Debtors, the Post-Effective Date Debtors, the Creditor Litigation Trust or the Debtor Liquidating Trust pursuant to the Plan (including the Plan Supplement) on and after the Confirmation Date, including any transfers in furtherance of the Plan; (d) any assumption or sale by the Debtors, Post-Effective Date Debtor(s) or the Creditor Litigation Trust or the Debtor Liquidating Trust of their interests in unexpired leases of nonresidential real property or Executory Contracts pursuant to section 365(a) of the Bankruptcy Code; and (e) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan or Plan Supplement, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, intangible tax, deed stamps, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

M.    *Insurance Policies*

All of the Insurance Policies (including, but not limited to, the D&O Insurance Policies) and all rights and obligations of the Debtors under the Insurance Policies will automatically become vested, unaltered, in the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable, as of the Effective Date without necessity for further approvals or orders, unless such Insurance Policies (i) have been assumed and assigned to the Buyer, (ii) were rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, or (iii) are required to monetize a recovery on a Retained Cause of Action, in which case the proceeds of any recovery under such Insurance Policies shall vest unaltered in the Creditor Litigation Trust. To the extent that any Insurance Policies are deemed Executory Contracts, unless such Insurance Policies have been assumed and assigned to the Buyer or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, this Plan will constitute a motion to assume and assign to the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable, permit to "ride through" and ratify such Insurance Policies and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute both approval of such assumption and assignment pursuant to sections 105 and 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption and assignment is in the best interests of the Estates. Nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors, the Debtor Liquidating Trust, the Post-Effective Date Debtor(s), or any other individual or entity, as applicable, under (or affect the coverage under) any Insurance Policies, except that all rights and claims in respect of recovery on a deductible or retention with respect to the D&O Insurance Policies is waived such that any collection in connection with claims by the Creditor Litigation Trust is limited to the proceeds of

the D&O Insurance Policies themselves, reduced by any amount of deductible or retention.  For the avoidance of doubt, no person or entity shall be required to satisfy any deductible or self-insured retention or advance any funds whatsoever in order to recover under the D&O Insurance Policies.  Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, a Sale Order (if any), and any other document related to any of the foregoing, on the Effective Date: (i) nothing shall alter or modify the terms and conditions of and/or any rights, benefits, claims, rights to payments, or recoveries under any Insurance Policies; and (ii) for the avoidance of doubt, nothing shall authorize any party, including the Buyer in connection with the Sale Transaction, to amend, alter, modify, or terminate in any way, any Insurance Policy, including, but not limited to, any D&O Liability Insurance Policy.

N.      *Expedited Tax Determination of the Debtors*

The Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust, as applicable, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed or to be filed for or on behalf of the Debtors for all taxable periods ending after the Petition Date through the Effective Date; provided, however, that, as applicable, the Debtors shall keep the advisors to the Ad Hoc Committee of Noteholders reasonably informed with respect to the status of such request.

O.      *Actions Required from Debtors' Insiders and Affiliates to Exempt Themselves from Receiving a Recovery on Account of Senior Note Claims*

The Debtors shall use reasonable efforts to cause their Chief Executive Officer as of the Petition Date who beneficially holds an interest in the Allowed Senior Notes Claims to take any action reasonably requested by the Ad Hoc Committee of Noteholders, DTC or the Indenture Trustee to ensure that he does not receive any portion of the Senior Notes Recovery on account of his Allowed Senior Notes Claims and the Chief Executive Officer shall take any such action which the Ad Hoc Committee of Noteholders, DTC or the Indenture Trustee may reasonably request including, but not limited to, assigning any portion of the Senior Notes Recovery which he may inadvertently receive to the Creditor Litigation Trust for redistribution to the holders of Allowed Secured Note Claims (other than the Chief Executive Officer). The Creditor Litigation Trust and the Ad Hoc Committee of Noteholders shall have standing to enforce this provision and to recover fees and costs from the Chief Executive Officer incurred in enforcing this provision.

P.      *Consolidation of the Debtors for Plan Purposes*

The Debtors' Estates will be consolidated for administrative purposes related to this Plan, including for purposes of (1) implementing this Plan, (2) voting, (3) assessing whether the standards for Confirmation have been met, and (4) calculating and making Distributions under this Plan.

On the Effective Date (1) all of the Debtors' assets and liabilities will be merged; (2) all guarantees or responsibility of one Debtor of the obligations of any other Debtor will be eliminated, and all guarantees or responsibility executed by multiple Debtors of the obligations of any other Entity will be consolidated into a single obligation, so that any Claim against any Debtor and any

guarantee or responsibility thereof executed by any other Debtor and any joint or several liability of any of the Debtors will be one obligation of the Debtors; and (3) each and every Claim Filed or to be Filed in the Chapter 11 Case of any Debtor will be deemed Filed against, and will be a single obligation of, the Debtors.  This consolidation will not affect (a) the vesting of the Debtors' assets in the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust and the Debtor Liquidating Trust, as applicable; (b) the right to distributions from any Insurance Policies or proceeds of the policies; (c) any Liens granted or arising at any time prior to the Effective Date or the priority of those Liens; (d) any Causes of Action, including the Retained Causes of Action, or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no consolidation of the Estates in any respect; or (e) the rights of the Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust and the Debtor Liquidating Trust; to contest setoff or recoupment rights alleged by creditors on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable law.  The Plan shall not result in the merger or otherwise affect the separate legal existence of each Debtor.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *General Treatment*

On January 18, 2024, the Debtors filed the Assumption Notice, which identified Executory Contracts and Unexpired Leases that may be assumed and assigned in connection with the Sale Transaction, Cure Costs, and related procedures for objecting to the assumption and assignment of the Executory Contracts and Unexpired Leases listed therein.

1.    Sale Transaction Consummated Under the Plan

To the extent the Sale Transaction is consummated pursuant to the Plan, the Executory Contracts and Unexpired Leases identified in the List of Assumed Contracts (subject to any right to amend or supplement), which shall be filed as part of the Plan Supplement, shall be assumed on the Effective Date by the Reorganized Debtors or the Buyer, as applicable.  To the extent an Executory Contract or Unexpired Lease is not listed on the List of Assumed Contracts, all such remaining Executory Contracts and Unexpired Leases shall be deemed rejected by the Debtors on the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or was terminated pursuant to its terms or by agreement of the parties thereto; (iii) is the subject of a pending motion to assume or reject as of the Effective Date; (iv) is an Insurance Policy; or (v) is one in which any Bluestar Alliance member is a counterparty, in a circumstance where the Plan Sponsor is the Buyer of the Reorganized Equity or the Assets of the Debtors pursuant to this Plan.

For the avoidance doubt, as described in more detail in the Disclosure Statement, as of the Effective Date, and solely to the extent the Plan Sponsor is the Successful Bidder, the Plan Sponsor shall assume all Executory Contracts with all members of the Bluestar Alliance.

To the extent the Sale Transaction is consummated pursuant to the Plan, subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall

41

constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Debtors have provided adequate assurance of future performance under such assumed Executory Contract and Unexpired Lease. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Reorganized Debtors or the Buyer, as applicable, in accordance with its terms, except as modified by the provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

If an Assumption Dispute is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the Closing Date or Effective Date, the Debtors and the Buyer may determine that any contract subject to such resolved Assumption Dispute will no longer be assumed and assigned pursuant to the applicable transaction.

2. <u>Sale Transaction Consummated Under a Sale Order</u>

To the extent the Sale Transaction is not consummated pursuant to the Plan and the Buyer consummates an Asset Purchase Agreement pursuant to a Sale Order, the terms of the Sale Order and the Sale Transaction Documents approved pursuant to the terms of such Sale Order, shall govern the assumption or rejection of any Executory Contract or Unexpired Lease, as more fully set forth therein. To the extent an Executory Contract or Unexpired Lease is not assumed and assigned pursuant to the Sale Order and applicable Sale Transaction Documents, all such remaining Executory Contracts and Unexpired Leases shall be deemed rejected by the Debtors on the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or was terminated pursuant to its terms or by agreement of the parties thereto; (iii) is the subject of a pending motion to assume or reject as of the Effective Date; or (iv) is an Insurance Policy. The Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

B. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

1. <u>Sale Transaction Consummated Under the Plan</u>

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree, in each case subject to the Sale Transaction Documentation. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

42

If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Cost), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided, that*, the Debtors, the Reorganized Debtors, the Plan Administrator, the Creditor Litigation Trustee, the Debtor Liquidating Trustee or the Buyer, as applicable, may settle any dispute regarding the Cure Cost or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

To the extent an Assumption Dispute relates solely to the Cure Cost, and such Assumption Dispute is not consensually resolved or finally determined by the Bankruptcy Court prior to the Closing Date (as defined in the Equity Purchase Agreement or Asset Purchase Agreement, as applicable) with respect to any assumed Executory Contract or Unexpired Lease, so long as the Reorganized Debtors or the Buyer, as applicable, remains responsible to satisfy the Allowed Cure Costs, subject to entry by the Bankruptcy Court of the Confirmation Order, the Debtors may assume such Executory Contract at the Closing (as defined in the Equity Purchase Agreement or Asset Purchase Agreement, as applicable) and upon either the consensual resolution or final determination by the Bankruptcy Court of such cure objection, the Buyer or Reorganized Debtors shall promptly pay to such non-Debtor counterparty the Allowed amount of the Cure Costs owing to such non-Debtor counterparty with respect to such Assumed Contract.

    2.    <u>Sale Transaction Consummated Under a Sale Order</u>

In the event that the Sale Transaction is consummated pursuant to a Sale Order, the Sale Order and the terms of the applicable Sale Transaction Documents approved pursuant to such Sale Order shall govern the resolution of any assumption and assignment related disputes.

C.    *Rejection Damages Claims*

In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 4 (General Unsecured Claims). Such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, the Post Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust, unless a Proof of Claim is filed in accordance with the Claims Bar Date Order by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.

D.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, including a Sale Order (if any), each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

E.    *Reservation of Rights*

The Debtors may amend the List of Assumed Contracts and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any Executory Contract or Unexpired Lease and/or (ii) amend the proposed Cure Cost. The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors, Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust have any liability thereunder.

Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors, the Reorganized Debtors or the Post Effective Date Debtor(s) under any executory or non-executory contract or any unexpired or expired lease.  Further, nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Reorganized Debtors or the Post Effective Date Debtor(s), as applicable, under any executory or non-executory contract or any unexpired or expired lease.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.    *Distribution Date*

Except as otherwise provided in the Plan, in the Creditor Litigation Trust Agreement, in the Debtor Liquidating Trust Agreement or in the Plan Administrator Agreement, any Distributions under the Plan prior to the Effective Date shall be made by the Debtors. After the Effective Date, the Creditor Litigation Trust, the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable, shall from time to time make further Distributions under the Plan; *provided*, *however*, that the terms of the Professional Fee Escrow Agreement shall govern the disposition of any amounts in the Professional Fee Account, which shall be disbursed by the Professional Fee Escrow Agent in accordance with the Professional Fee Escrow Agreement.

B.    *Rights and Powers of Distribution Agent*

The Distribution Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all Distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

C.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled, but not required, to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      Delivery of Distributions

Subject to Bankruptcy Rule 9010, all Distributions to any Holder of an Allowed Claim shall be made by the Distribution Agent, who shall transmit such Distribution to the applicable Holders, including the Indenture Trustee for the Senior Noteholders, of Allowed Claims on behalf of the Debtors.

Notwithstanding any provision of the Plan to the contrary, Distributions to Holders of Allowed Senior Notes Claims shall be made to or at the direction of the Indenture Trustee for further distribution to holders of Allowed Senior Notes Claims held under CUSIP 65528NAA3, in accordance with the terms of the Senior Notes Indenture; provided that no distributions will be made to the Debtors' Chief Executive Officer as of the Petition Date on account of his Allowed Senior Notes Claims held under CUSIP 65528NAB1.  Such Distributions shall be subject in all respects to the rights of the Indenture Trustee to assert its charging lien against such Distributions as set forth in the Senior Notes Indenture.  The Indenture Trustee shall have no duties or responsibility relating to any form of distribution that is not DTC eligible and the Debtors, Reorganized Debtors, the Post Effective Date Debtor(s), the Debtor Liquidating Trustee, the Creditor Litigation Trustee, or the Plan Administrator, as applicable, shall seek the cooperation of DTC so that any distribution on account of an Allowed Senior Notes Claims that is held in the name of, or by a nominee of, DTC, shall be made through the facilities of DTC on the Effective Date of the Plan, or as soon as reasonably practicable thereafter.  In no event shall the Indenture Trustee (in any capacity) be responsible for any manual, paper, or similar physical, and/or individualized method of distribution or other method of distribution that is not customary for the Indenture Trustee under the circumstances.  The Indenture Trustee shall not incur any liability whatsoever on account of any Distributions under the Plan, except for fraud, gross negligence, or willful misconduct.  The Reorganized Debtors and the Creditor Litigation Trustee, as applicable, shall reimburse the Indenture Trustee for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred on or after the Effective Date in connection with the implementation of the Plan, including making Distributions pursuant to, and in accordance with, the Plan, without the need for further approval or order of the Bankruptcy Court.

For the avoidance of doubt, notwithstanding anything to the contrary in the Indenture, and in furtherance of implementation of the Plan, the Indenture Trustee may take any action reasonably requested by the Debtors to ensure that no distribution is made to the Debtors' Chief Executive Officer as of the Petition Date on account of his Allowed Senior Notes Claims, including, but not limited to, instructing DTC to effectuate a chill of trading on Senior Notes held under CUSIP 65528NAB1, and the Indenture Trustee shall have no obligation to make and/or direct that

45

distributions be made to the Debtors' Chief Executive Officer as of the Petition Date on account of his Allowed Senior Notes Claims held under CUSIP 65528NAB1.

3.    Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to a Holder is returned as undeliverable, no further Distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder as soon as reasonably practicable without interest; *provided, that*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the time of such Distribution. After such date, all unclaimed property or interests in property shall be redistributed Pro Rata as provided under the Plan (it being understood that, for purposes of this Article VI.C.3, "Pro Rata" shall be determined as if the Claim underlying such unclaimed Distribution had been Disallowed), and all other unclaimed property or interests in property shall revert to and vest in the Creditor Litigation Trust, the Debtor Liquidating Trust, the Reorganized Debtors or the Post Effective Date Debtor(s), as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred. Nothing herein shall require the Distribution Agent to attempt to locate Holders to whom Distributions were undeliverable.

A Distribution shall be deemed unclaimed if a Holder has not (i) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (ii) given notice to the Distribution Agent of an intent to accept a particular distribution; (iii) responded to the Distribution Agent's requests for information necessary to facilitate a particular distribution; or (iv) taken any other action necessary to facilitate such distribution.

D.    *Compliance with Tax and Other Requirements*

In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on the Distribution Agent by any Governmental Unit, and all Distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (i) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes; (ii) withholding Distributions pending receipt of information necessary to facilitate such Distributions; or (iii) establishing any other mechanisms they believe are reasonable and appropriate. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. The Distribution Agent in making Distributions pursuant to the Plan, has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to the Distribution Agent for payment of any such tax obligations. Additionally, in the case of a non-

46

Cash Distribution that is subject to withholding, the Distribution Agent has the right, but not the obligation, to withhold an appropriate portion of such property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the Distribution Agent for any advance payment of the withholding tax) or (ii) pay the withholding tax using its own funds and retain such withheld property. The Distribution Agent reserves the right to allocate all Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Any party entitled to receive any property as an issuance or Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Person designated by the Distribution Agent (which Entity shall subsequently deliver to the Distribution Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt from information reporting under the Tax Code and provides to the Distribution Agent notice and evidence of such exemption. If such request is made by the Distribution Agent or such other Person designated by the Distribution Agent and the Holder fails to comply within ninety (90) days after the request is made, the amount of such Distribution shall irrevocably revert to the Creditor Litigation Trust, the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable, and any Claim in respect of such Distribution shall be forever barred from assertion against the Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, and their respective property.

E.    *Allocations*

Unless otherwise required by law (as reasonably determined by the Distribution Agent), Distributions shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of such Claims, including any portion of such Claims for accrued but unpaid interest as Allowed herein.

F.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

G.    *Setoffs and Recoupment*

Except as otherwise expressly provided herein, the Distribution Agent may, but shall not be required to, set off against or recoup from any Claims of any nature whatsoever that the Distribution Agent may have against the Holder, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trustee or the Debtor Liquidating Trustee of any such Claim they may have against the Holder of such Claim; *provided, that*, for the avoidance of doubt, in no event shall the Distribution Agent be able to apply, in any such setoff or recoupment, any Cause of Action acquired by the Buyer pursuant to the Sale Transaction. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the

47

Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trustee or the Debtor Liquidating Trustee, as applicable, unless (i) the Debtors have consented (which consent shall not be unreasonably withheld) or (ii) such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

H.    *Claims Paid or Payable by Third Parties*

    1.    <u>Claims Paid by Third Parties</u>

A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Distribution Agent.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Distribution Agent on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the Distribution Agent to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

    2.    <u>Claims Payable by Insurance Carriers</u>

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

48

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
## AND DISPUTED CLAIMS

A.    *Claims and Interests Administration Responsibilities*

Except as otherwise expressly provided in the Plan, the Creditor Litigation Trust Agreement, the Debtor Liquidating Trust Agreement or the Plan Administrator Agreement, as applicable, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtor Liquidating Trustee, the Creditor Liquidating Trustee, and the Plan Administrator shall have the authority to: (i) file, withdraw, or litigate to judgment objections to Claims or Interests; (ii) settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the Claims Register to reflect any such settlements and compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Debtor Liquidating Trustee, the Creditor Liquidating Trustee, and the Plan Administrator shall have and retain any and all applicable rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Disputed Interest.

B.    *Estimation of Claims*

Before or after the Effective Date, the Debtors, the Plan Administrator or the Debtor Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Distribution Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) calendar days after the date on which such Claim or Interest is estimated. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

C.    *Adjustment to Claims Register Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims

Register by the Debtor Liquidating Trustee or Plan Administrator, as applicable, upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Time to File Objections to Claims*

The Debtor Liquidating Trustee or Plan Administrator, as applicable shall be entitled to object to Claims (other than Senior Notes Claims, which may be objected to by the Creditor Litigation Trustee).  Any objections to Proof of Claims shall be served and filed on or before the later of (a) 180 days after the Effective Date, and (b) on such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion by the Creditor Litigation Trustee, Debtor Liquidating Trustee or Plan Administrator, as applicable.  The expiration of such period shall not limit or affect the Debtors' or the Distribution Agent's rights to dispute Claims asserted in the ordinary course of business other than through a proof of Claim.

E.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable pursuant to a Cause of Action under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable pursuant to a Cause of Action under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code (other than any Cause of Action that is an Assumed Contract (as defined in the applicable Sale Transaction Documents)), shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Creditor Litigation Trust, the Debtor Liquidating Trust, the Reorganized Debtors or the Post Effective Date Debtor(s), as applicable.

F.    *Late Claims*

On or after the Claims Bar Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed without the prior authorization of the Bankruptcy Court or the Distribution Agent.

G.    *Distributions After Allowance; Disputed Claims Reserve*

On each Distribution Date, the Debtors, the Plan Administrator or the Debtor Liquidating Trustee, as applicable, shall retain a Disputed Claims Reserve.  As soon as reasonably practicable after a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan without any interest, dividends, or accruals to be paid on account of such Claim; *provided, that*, such distribution shall not exceed the amount retained with respect to such Claim.  After the resolution of a Disputed Claim, the Debtors, the Plan Administrator or the Debtor Liquidating Trustee, as applicable, shall transfer any amounts that were retained for such Disputed Claim that do not become Allowed to the Indenture Trustee for the benefit of the Holders of Allowed Senior Notes Claims, in accordance with this Plan.

50

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.     *Vesting of Assets*

On the Effective Date, as applicable, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i)(a) if an Equity Sale Transaction is consummated, all property of the Debtors' Estates acquired by the Buyer under the Equity Purchase Agreement shall vest in the Reorganized Debtors and the Reorganized Equity Interests shall vest in the Buyer, or (b) if an Asset Sale Transaction is consummated pursuant to the Plan, all property of the Debtors' Estates acquired by the Buyer under the Asset Purchase Agreement shall vest in the Buyer; (ii) other than the Creditor Litigation Trust Assets, all other remaining property of the Debtors' Estates under any Sale Transaction, whether remaining after application of (a) or (b) of the preceding clause or consummation of an Asset Purchase Agreement pursuant to a Sale Order, shall vest in the Debtor Liquidating Trust or the Post Effective Date Debtor(s), as applicable, in each case, free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan, the Confirmation Order, and the Creditor Litigation Trust Agreement; and (iii) the Creditor Litigation Trust Assets shall vest in the Creditor Litigation Trust.  On and after the Effective Date, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust and the Debtor Liquidating Trust may take any action, including, without limitation, the operation of its business, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.

B.     *Binding Effect*

As of the Effective Date, the Plan shall bind all Holders of Claims against and Interests in the Debtors and their successors and assigns, notwithstanding whether any such Holders were (a) Impaired or Unimpaired under the Plan; (b) deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any Distribution under the Plan.

C.     *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan is and shall be deemed a good-faith compromise and settlement of all claims, interests, and controversies belonging to the Debtors that are being settled under the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such claims, interests, and controversies belonging to the Debtors, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors and their Estates, and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule

51

9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Creditor Litigation Trustee and the Debtor Liquidating Trustee or Plan Administrator, as applicable, may compromise and settle Claims against, and Interests in, the Debtors and their Estates and the Retained Causes of Action.

D.    *Discharge of Claims and Termination of Interests*

Upon entry of the Confirmation Order, and except as otherwise provided in the Plan, the Debtors shall be discharged to the fullest extent permitted by section 1141(d) of the Bankruptcy Code.

E.    *Releases*

1.    <u>Debtor Release</u>

**As of the Effective Date, except as otherwise expressly set forth herein or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan and the transactions contemplated thereby, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, and the Debtors' Estates from any and all Claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), Liens, remedies, losses, contributions, indemnities, costs, and liabilities whatsoever, including any derivative Claims, such as those asserted or assertable on behalf of the Debtors, or the Debtors' Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities law, or otherwise that the Debtors, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, or the Debtors' Estates, their Chapter 11 Cases, the purchase, sale, issuance, cancellation or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the Restructuring Transactions, the restructuring of any Claim or Interest before or during the Debtors' Chapter 11 Cases, the Restructuring Support Agreement, the Definitive Documents and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof (including the Sale Order, if any), the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by the Debtors in their Chapter 11 Cases, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, that*, nothing in this Plan shall be construed to release (i) the Released Parties from intentional fraud, willful misconduct, or gross negligence as determined by a Final Order or (ii) the Back-Up Bidder, if any, from its obligations under**

52

the terms of the Sale Transaction Documents unless and until the Successful Bid is consummated, and provided further that nothing in this Article VIII.E.1. shall act as a release of a direct claim any holder of a Claim or Interest may have against a Released Party. The Debtors, and the Debtors' Estates shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Plan. For the avoidance of doubt, nothing in this Plan shall release any current or former Affiliate, or Insider of the Debtors from any Retained Causes of Action and no current and former Affiliate or Insider of the Debtors will be a Released Party unless consented to in writing by the Required Consenting Noteholders, except for the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors specifically named in the definition of Released Party.

    2.    <u>Releases by Releasing Parties</u>

As of the Effective Date, except as otherwise expressly set forth herein or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan and the transactions contemplated thereby, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Releasing Parties from any and all Claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), Liens, remedies, losses, contributions, indemnities, costs, and liabilities whatsoever, including any derivative Claims, such as those asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Debtors' Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities law, or otherwise that such Releasing Parties or their Affiliates would have been legally entitled to assert against any of the Released Parties in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, the Buyer, or the Debtors' Estates, their Chapter 11 Cases, the purchase, sale, issuance, cancellation or rescission of the purchase or sale of any Security of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the Restructuring Transactions, the restructuring of any Claim or Interest before or during the Debtors' Chapter 11 Cases, the Restructuring Support Agreement, the Definitive Documents and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof (including the Sale Order, if any), the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by the Debtors in their Chapter 11 Cases, in all cases based upon any act or omission, transaction, agreement, event, or other

53

occurrence taking place on or before the Effective Date; *provided, that*, nothing in this Plan shall be construed to release (i) the Released Parties from intentional fraud, willful misconduct, or gross negligence as determined by a Final Order or (ii) the Back-Up Bidder, if any, from its obligations under the terms of the Sale Transaction Documents unless and until the Successful Bid is consummated. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Plan against each of the Released Parties. For the avoidance of doubt, nothing in this Plan shall release any current or former Affiliate, or Insider of the Debtors from any Retained Causes of Action or any direct claims which a direct or beneficial holder of the Senior Notes may have against an Insider or Affiliate of the Debtors who is not a Released Party; and no current or former Affiliate or Insider of the Debtors will be a Released Party unless consented to by the Required Consenting Noteholders, except for the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors specifically named in the definition of Released Party.

F.    *Exculpation*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any Claim arising from an action or omission taking place between the Petition Date and the Effective Date of the Plan in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security or Asset of the Debtors; the negotiation and pursuit of the Sale Order (if any), Disclosure Statement, or the Sale Transaction and Sale Transaction Documents, as applicable, the Plan, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for intentional fraud, willful misconduct, or gross negligence, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.

G.    *Injunction*

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Required Consenting Noteholders, the Creditor Litigation Trustee and the Debtor Liquidating Trust, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or

Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer or the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); and (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer or the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any), or property to be distributed under the Plan, except as to any setoff exercised in the Bankruptcy Court before the Plan is confirmed, or as contemplated or Allowed by the Plan.

By failing to object to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this **Article VIII.G**.

The injunctions in this **Article VIII.G** shall extend to any successors of the Debtors (including the Creditor Litigation Trust and the Debtor Liquidating Trust or the Post Effective Date Debtor(s), as applicable), the Reorganized Debtors, the Buyer and their respective property and interests in property.

55

H.    *Subordination Rights*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any distribution made pursuant to the Plan.  Except as provided herein, all subordination rights that a Holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined. The provisions of any statutory, contractual or structural subordination of Claims shall remain enforceable by the Creditor Litigation Trust and Debtor Liquidating Trust or Post-Effective Date Debtor(s), as applicable, on behalf of the Estates after the occurrence of the Effective Date.

I.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors, the Buyer, the Creditor Litigation Trustee, the Debtor Liquidating Trustee, the Reorganized Debtors, the Post Effective Date Debtor(s), or the Plan Administrator, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Creditor Litigation Trust, the Debtor Liquidating Trustee, the Buyer, the Reorganized Debtors, the Post Effective Date Debtor(s), or the Plan Administrator (as applicable), and its (or their) successors and assigns.  On and after the Effective Date, the Debtors, the Buyer, the Creditor Litigation Trustee, the Debtor Liquidating Trustee, the Reorganized Debtors, the Post Effective Date Debtor(s), or the Plan Administrator, as applicable (and any of their respective agents or attorneys), shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, intellectual property assignments, mortgage or deed of trust releases, or such other forms or release documents as may be necessary or appropriate to evidence such releases and implement the provisions of this <u>Article VIII.I</u>.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

A.    *Conditions Precedent to Effective Date*

1.    The following are conditions precedent to the Effective Date of the Plan:

a.    the Bankruptcy Court shall have entered the Confirmation Order, and such order shall be in full force and effect and not have been stayed pending appeal;

b.　the Professional Fee Account shall have been established and funded in Cash with the Professional Fee Escrow Agent in accordance with <u>Article II.B.2</u>;

c.　the Indenture Trustee Fees and Expenses and Consenting Noteholder Group Advisors Fees and Expenses shall have been paid.

d.　all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

e.　all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

f.　the Sale Transaction Documents, as applicable, shall (i) have been executed and delivered, and any conditions precedent contained to effectiveness therein and to consummation of the Sale Transaction have been satisfied or waived in accordance therewith and (ii) be in full force and effect and binding upon the relevant parties; and

g.　the Sale Transaction shall have been consummated.

Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided, further, that*, to the extent a condition precedent (a "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

B.　*Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this <u>Article IX</u> may be waived (i) only by the Debtors; (ii) with respect to the conditions set forth in <u>Article IX.A.1.a</u>, <u>d</u>, <u>e</u>, <u>f</u>, and <u>g</u>, only with the consent of the Buyer, the Ad Hoc Committee of Noteholders, the Creditors' Committee, and the Plan Sponsor and (iii) solely with respect to <u>Article IX.A.1.c</u>, the Ad Hoc Committee of Noteholders.

C.　*Substantial Consummation*

"Substantial consummation" of the Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in any Debtor; (ii) prejudice in any manner the rights of any Debtor, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by any Debtor, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

1.    <u>Plan Modifications</u>.    The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of Holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

2.    <u>Other Amendments</u>.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the date hereof and before confirmation are approved pursuant to section 1127(a) of the Bankruptcy Code.  Any modifications made after confirmation and before substantial consummation of the Plan shall be subject to section 1127(b) of the Bankruptcy Code.

C.    *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed

58

pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of any Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction:

1. to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases, including disputes arising from the assumption or rejection of Executory Contracts, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

2. to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on, or commenced after, the Confirmation Date;

3. to ensure that Distributions to Holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order, including to ensure that an Allowed Claim does not receive consideration in excess of the Allowed amount of such Claim, and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely paid;

4. to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims;

5. to consider and adjudicate any motion to estimate a reserve for any Claim or Class of Claims and to set a reserve with respect to such Claims or Classes of Claims;

6. to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

7. to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

8. to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

9.      to hear and determine all Professional Fee Claims and disputes in respect of Indenture Trustee Fees and Expenses, if any;

10.      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, Sale Transaction, the Sale Transaction Documents, the Sale Order (if any), or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

11.      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

12.      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

13.      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

14.      to hear, adjudicate, decide, or resolve any and all matters related to Article VIII, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

15.      to resolve disputes concerning Disputed Claims or the administration thereof;

16.      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

17.      to enter one or more final decrees closing the Chapter 11 Cases;

18.      to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located and adjudicate any disputes with respect thereto;

19.      to resolve any disputes regarding whether any party is entitled to postpetition interest, and if so, the applicable interest rate;

20.      to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Cost, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

21.      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

22.      to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than

defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code; and

23.    to hear and determine any Retained Causes of Action which the Creditor Litigation Trust may choose to bring in the Bankruptcy Court and any other matters related to or concerning the Creditor Litigation Trust, including, but not limited to, (i) motions to extend the term of such trust, and (ii) Bankruptcy Rule 2004 examination motions brought by the Creditor Litigation Trust in respect to its investigation of the Retained Causes of Action.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtor Liquidating Trust or the Post-Effective Date Debtor(s), as applicable, shall pay any and all Quarterly Fees as when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtor Liquidating Trustee or the Plan Administrator, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Post-Effective Date Debtor(s), and the Debtor Liquidating Trust, as applicable, shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

B.    *Plan Supplement*

The Plan Supplement shall be filed with the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Documents included in the Plan Supplement will be posted at the website of the Debtors' notice, claims, and solicitation agent.

C.    *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the Effective Date, upon the effectiveness of the Plan, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Post-Effective Date Debtor(s), the Creditor Litigation Trust, and the Debtor Liquidating Trust, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims shall be as fixed, adjusted, or

61

compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

D.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order in accordance with Article IX.A.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, Creditors' Committee, the Ad Hoc Committee of Noteholders, the Indenture Trustee, the Plan Sponsor, or the U.S. Trustee shall be served on:

| **The Debtors** | **Counsel to the Plan Sponsor** |
|---|---|
| Nogin, Inc. | Choate Hall & Stewart |
| 105 E 34th Street, Suite 137 | Two International Place |
| New York, NY 10016 | Boston, MA  02110 |
| Attention: Mike Bassiri | Attention: John F. Ventola |
|  |                 M. Hampton Foushee |
| Email:  Mbassiri@nogin.com |  |
|  | Email:     jventola@choate.com; |
|  |                 hfoushee@choate.com |
| **Counsel for the Debtors** |  |
| Richards, Layton & Finger, P.A. | and |
| 920 North King Street |  |
| Wilmington, DE  19801 | Cole Schotz, P.C. |
| Attention: Daniel J. DeFranceschi | 500 Delaware Avenue, Suite 1410 |
|          John H. Knight | Wilmington, DE 19801 |
|          Michael J. Merchant | Attention: Patrick Reilley |
|          David T. Queroli |  |
|          Matthew P. Milana | Email: preilley@coleschotz.com |

Email:    defranceschi@rlf.com
          knight@rlf.com
          merchant@rlf.com
          queroli@rlf.ocm
          milana@rlf.com

**The Indenture Trustee**
U.S. Bank Trust Company, National Association
100 Wall Street, Suite 600
New York, NY 10005
Attention:  Justin Shearer

Email:    justin.shearer@usbank.com

**Counsel for the Indenture Trustee**
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Attention:  Kathleen M. LaManna
            Nicole Lapenta

Email:    klamanna@goodwin.com
          nlapenta@goodwin.com
          bankruptcy@goodwin.com
          bankruptcyparalegal@goodwin.com

**Office of the United States Trustee**
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Attention:  Jane Leamy

Email:    jane.m.leamy@udsoj.gov

**Consenting Noteholder Group Advisors**
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
Facsimile: (212) 209-4801
Attention: Robert J. Stark
           Bennett S. Silverberg

Email:    rstark@brownrudnick.com
          bsilverberg@brownrudnick.com

and

Brown Rudnick LLP
One Financial Center
Boston, MA 02111
Attention: Steven B. Levine
           Sharon I. Dwoskin

Email:    slevine@brownrudnick.com
          sdwoskin@brownrudnick.com
and

Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Attention: Scott Cousins

Email:    scott.cousins@lewisbrisbois.com

**Counsel to the Creditors' Committee**
Morris James LLP,
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801-1494
Attention: Eric Monzo
           Brya M. Keilson
           Jason S. Levin

Email:    emonzo@morrisjames.com
          bkeilson@morrisjames.com
          jlevin@morrisjames.com
and

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020

Attention: Jeffrey Cohen
Eric S. Chafetz
Brittany M. Clark

Email:    jcohen@lowenstein.com
echafetz@lowenstein.com
bclark@lowenstein.com

and

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Attention: Brent I. Weisenberg

Email:    bweisenberg@lowenstein.com

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

The Plan, Plan Supplement, and Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

I.    *Nonseverability of Plan Provisions*

If, prior to the Confirmation Hearing, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, at the request of the Debtors, which request shall be consistent with the terms of the Restructuring Support Agreement (so long as such agreement has not been terminated), the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted *provided, that*, any such alteration or interpretation shall be reasonably acceptable to the Debtors. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without consent (such consent not to be unreasonably withheld, conditioned, or delayed) from the Debtors; and (iii) nonseverable and mutually dependent.

64

J.      *Dissolution of Committee*

On the Effective Date, any official committees appointed in the Chapter 11 Cases shall dissolve; *provided, that,* following the Effective Date, such committee shall continue in existence solely for the purpose of filing and prosecuting applications for allowance of Professional Fee Claims.  Upon the dissolution of any official committees appointed in the Chapter 11 Cases, such committee members and their respective professionals shall cease to have any duty, obligation or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Respectfully submitted, as of January 22, 2024

Nogin, Inc. and Its Debtor Affiliates

By:       /s/ *Vladimir Kasparov*
Name:    Vladimir Kasparov
Title:     Chief Restructuring Officer

65