IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Nogin, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11945 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 194, 195, 201, 203 & 204** |

NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT
OF VOTING RECORD DATE, (III) HEARING ON CONFIRMATION OF THE PROPOSED
PLAN, (IV) PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PROPOSED
PLAN, AND (V) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN

**TO ALL PARTIES IN INTEREST:**

PLEASE TAKE NOTICE THAT:

1. *Approval of Disclosure Statement*. On January 22, 2024, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order [Docket No. 201] (the "**Order**") approving the *Disclosure Statement for Joint Chapter 11 Plan of Nogin, Inc. and Its Debtor Affiliates* [Docket No. 195] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "**Disclosure Statement**"),[2] filed in Nogin, Inc. and its debtor affiliates' (collectively, the "**Debtors**") chapter 11 cases (the "**Chapter 11 Cases**"). The Order, among other things, authorizes the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Nogin, Inc. and Its Debtor Affiliates* [Docket No. 194] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "**Plan**").[3]

2. *Confirmation Hearing*. A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the Bankruptcy Court, 824 North Market Street, 3rd Floor, Courtroom 7, Wilmington, Delaware 19801, on **February 29, 2024 at 10:00 a.m. (Prevailing Eastern Time)**. The Confirmation Hearing may be adjourned or continued from time to time with consent of the DIP Agent and Consenting Noteholders (provided that such consent is consistent with the RSA) without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3. *Temporary Allowance of Claims for Voting.* If you disagree with the amount set forth by the Debtors for your Claim or if you have filed a proof of claim and disagree with either (i) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan; or (ii) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount or Class, then you must file a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") requesting temporary allowance of your Claim in a different amount

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification number are: Nogin, Inc. (0703); Nogin Commerce, Inc. (0719); Native Brands Group LLC (0504). The mailing address for the Debtors is 105 E. 34th St, Suite 137, New York, NY 10016.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Proposed Plan (as defined herein), as applicable, or as the context otherwise requires.

[3] On January 22, 2024, the Debtors filed solicitation versions of the Plan [Docket No. 203] and Disclosure Statement [Docket No. 204].

or in a different Class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed and served on or before **February 14, 2024 at 4:00 p.m. (Prevailing Eastern Time)**.  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.  The deadline to file and serve objections to a timely-filed Rule 3018(a) Motion shall be **February 22, 2024, 2024 at 4:00 p.m. (Prevailing Eastern Time)**.

        4.    *Voting Record Date*.  The following holders of Claims against the Debtors as of **January 16, 2024** (the "**Voting Record Date**") are entitled to vote on the Plan.

| Class | Description |
|---|---|
| Class 3 | Senior Notes Claims |

        5.    *Voting Deadline*.  All votes to accept or reject the Plan must be __actually received__ by the Debtors' voting and tabulation agent, Donlin, Recano & Company, Inc. ("**DRC**"), by no later than **February 22, 2024 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Voting Deadline**").  Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

        6.    *Parties in Interest Not Entitled to Vote*.  Holders of Unimpaired Claims and/or Interests in classes conclusively presumed to accept the Plan are not entitled to vote and will not receive a Ballot.  Such holders will receive a Notice of Unimpaired Non-Voting Status.  In addition, holders of Impaired Claims and/or Interests in classes deemed to reject the Plan and holders of Claims that are not classified under the Plan are not entitled to vote and will not receive a Ballot.  Such holders will receive a Notice of Impaired Non-Voting Status.

        7.    *Objections to Confirmation*.  The deadline to object or respond to confirmation of the Plan is **February 22, 2024 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Confirmation Objection Deadline**").

        8.    Objections and responses, if any, to confirmation of the Plan, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (d) provide the basis for the objection and the specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (e) be filed and served by no later than the Confirmation Objection Deadline.

        9.    **IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING**.

        10.    *Additional Information.*  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' claims and noticing agent, DRC, (i) by phone at 1-877-739-9988 (toll free in the U.S.) or 1-877-739-9988 (international), (ii) by email at nogininfo@drc.equiniti.com, or (iii) by writing to Donlin, Recano & Company, Inc, c/o Equiniti,  Re: Nogin, Inc., *et al.,* 48 Wall Street, 22nd Floor, New York, NY 10005.  In addition, the Disclosure Statement and Plan may be viewed free of charge at https://www.donlinrecano.com/nogin and are on file with the Bankruptcy Court and may be reviewed by accessing the Bankruptcy Court's website: www.deb.uscourts.gov.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: www.pacer.psc.uscourts.gov.  Copies of the Disclosure Statement and Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court.

## NOTICE REGARDING CERTAIN RELEASE EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

*11.* **Releases, Exculpation, and Injunctions under Article VIII.** *Please be advised of the following provisions regarding the Releases, Exculpation and Injunctions provided under Article VIII of the Plan.*

12. **Debtor Release**

As of the Effective Date, except as otherwise expressly set forth herein or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan and the transactions contemplated thereby, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, and the Debtors' Estates from any and all Claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), Liens, remedies, losses, contributions, indemnities, costs, and liabilities whatsoever, including any derivative Claims, such as those asserted or assertable on behalf of the Debtors, or the Debtors' Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities law, or otherwise that the Debtors, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, or the Debtors' Estates, their Chapter 11 Cases, the purchase, sale, issuance, cancellation or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the Restructuring Transactions, the restructuring of any Claim or Interest before or during the Debtors' Chapter 11 Cases, the Restructuring Support Agreement, the Definitive Documents and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof (including the Sale Order, if any), the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by the Debtors in their Chapter 11 Cases, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, that*, nothing in the Plan shall be construed to release (i) the Released Parties from intentional fraud, willful misconduct, or gross negligence as determined by a Final Order or (ii) the Back-Up Bidder, if any, from its obligations under the terms of the Sale Transaction Documents unless and until the Successful Bid is consummated, and provided further that nothing in Article VIII.E.1. of the Plan shall act as a release of a direct claim any holder of a Claim or Interest may have against a Released Party. The Debtors, and the Debtors' Estates shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under the Plan. For the avoidance of doubt, nothing in the Plan shall release any current or former Affiliate, or Insider of the Debtors from any Retained Causes of Action and no current and former Affiliate or Insider of the Debtors will be a Released Party unless consented to in writing by the Required Consenting Noteholders, except for the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors specifically named in the definition of Released Party.

13. **Releases by Releasing Parties**

As of the Effective Date, except as otherwise expressly set forth herein or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan and the transactions contemplated thereby, on and after the Effective Date, the Released Parties[4]

---

[4] "Released Parties" means (i) the Debtors and their Estates; (ii) the Post-Effective Date Debtor(s); (iii) Reorganized Debtors, (iv) B. Riley Principal Investments, LLC and its Affiliates, (v) Bluestar Alliance, (vi) the Consenting Noteholders and any other direct or beneficial holder of the Senior Notes (except the Debtors' Chief Executive Officer

**shall be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Releasing Parties[5] from any and all Claims, interests (including Interests), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), Liens, remedies, losses, contributions, indemnities, costs, and liabilities whatsoever, including any derivative Claims, such as those asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Debtors' Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law, equity, contract, tort, or otherwise, by statute, violations of federal, state, provincial, foreign, or territorial securities law, or otherwise that such Releasing Parties or their Affiliates would have been legally entitled to assert against any of the Released Parties in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, the Buyer, or the Debtors' Estates, their Chapter 11 Cases, the purchase, sale, issuance, cancellation or rescission of the purchase or sale of any Security of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust or the Debtor Liquidating Trust, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the**

---

holding Senior Notes), (vii) the Indenture Trustee in its capacity as the Indenture Trustee for the Senior Notes and its counsel, Shipman & Goodwin LLP, (viii), Creditor Litigation Trust, (ix) Creditor Litigation Trustee, (x) Debtor Liquidating Trust, (xi) Debtor Liquidating Trustee (xii), Richards, Layton & Finger, P.A., (xiii) Livingstone Partners, LLC, (xiv) Triple P RTS, LLC, (xv) Vladimir Kasparov, in his capacity as Chief Restructuring Officer, (xvi) Robin Chiu, in her capacity as Deputy Chief Restructuring Officer, (xvii) Donlin, Recano & Company, Inc., (xviii) the Creditors' Committee and each member thereof (solely in their capacity as such), (xix) Morris James LLP, (xx) Lowenstein Sandler LLP, (xxi) Dundon Advisers LLC and (xxii) the Related Parties of the foregoing (except for the Debtors); *provided, however, that*, notwithstanding the foregoing, no current or former Affiliate, or Insider of the Debtors will be a Released Party unless consented to in writing by the Required Consenting Noteholders, and *provided further, however, that* the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors and the other Persons specifically named in this definition shall be Released Parties. Additionally, notwithstanding anything contained herein to the contrary, no current or former Affiliate or Insider of the Debtors may become a Released Party unless consented to in writing by the Required Consenting Noteholders if such status as a Released Party is solely due to its being a Related Party of the Reorganized Debtors.

[5] "Releasing Parties" means, collectively, (i) the holders of all Claims that are Unimpaired under the Plan and have not formally or informally objected in writing to the Plan, (ii) B. Riley Principal Investments, LLC and its Affiliates, (iii) Bluestar Alliance, (iv) the Consenting Noteholders, (v) the Indenture Trustee in its capacity as the Indenture Trustee for the Senior Notes, (vi) Creditor Litigation Trust, (vii) Creditor Litigation Trustee, (viii) Debtor Liquidating Trust, (ix) Debtor Liquidating Trustee, (x) the Senior Noteholders who are not Consenting Noteholders that (a) vote to accept the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan, (b) vote to reject the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan, or (c) abstain from voting on the Plan and do not affirmatively opt-out of the Releases by Releasing Parties on the ballot to solicit acceptances of the Plan; or (xi) an Entity in a voting class whose solicitation package was returned as undeliverable; *provided, however,* that in the event any Senior Noteholder that is not a Consenting Noteholder elects to opt out of the Releases by Releasing Parties, such opt-out is only effective as to the Senior Noteholder that elects to opt-out, and any Senior Noteholder that is not a Consenting Noteholder that has affirmatively elected to opt out of the Releases by Releasing Parties shall otherwise be unaffected by the Indenture Trustee being a Releasing Party; *provided, further, however* that any releases provided by the Creditor Litigation Trust, the Creditor Litigation Trustee or any direct or beneficial holder of the Senior Notes shall not be with respect to, and shall have no adverse effect on their rights to prosecute, any Retained Causes of Action transferred to the Creditor Litigation Trust or any direct claims which a direct or beneficial holder of the Senior Notes may have against an Insider or Affiliate of the Debtors who is not a Released Party. For the avoidance of doubt, the Consenting Noteholders shall be deemed to have provided the Releases by Releasing Parties in accordance with the RSA notwithstanding any Consenting Noteholder's affirmative opt-out on the ballot to solicit acceptances of the Plan.

.

**Restructuring Transactions, the restructuring of any Claim or Interest before or during the Debtors' Chapter 11 Cases, the Restructuring Support Agreement, the Definitive Documents and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof (including the Sale Order, if any), the solicitation of votes with respect to the Plan, or any other act or omission, or any other relief obtained by the Debtors in their Chapter 11 Cases, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, that*, nothing in the Plan shall be construed to release (i) the Released Parties from intentional fraud, willful misconduct, or gross negligence as determined by a Final Order or (ii) the Back-Up Bidder, if any, from its obligations under the terms of the Sale Transaction Documents unless and until the Successful Bid is consummated. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under the Plan against each of the Released Parties. For the avoidance of doubt, nothing in the Plan shall release any current or former Affiliate, or Insider of the Debtors from any Retained Causes of Action or any direct claims which a direct or beneficial holder of the Senior Notes may have against an Insider or Affiliate of the Debtors who is not a Released Party; and no current or former Affiliate or Insider of the Debtors will be a Released Party unless consented to by the Required Consenting Noteholders, except for the attorneys, accountants, investment bankers, consultants and other professionals of the Debtors specifically named in the definition of Released Party.**

> **PLEASE BE ADVISED THAT IF YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES BY CERTAIN HOLDERS OF CLAIMS AND INTERESTS AS SET FORTH ABOVE CONTAINED IN ARTICLE VIII.E.2 OF THE PLAN UNLESS YOU TIMELY OBJECT TO SUCH RELEASES BY THE CONFIRMATION OBJECTION DEADLINE IN ACCORDANCE WITH PARAGRAPH 8 OF THIS NOTICE.**

14. **Exculpation**

**To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any Claim arising from an action or omission taking place between the Petition Date and the Effective Date of the Plan in connection with or arising out of the administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security or Asset of the Debtors; the negotiation and pursuit of the Sale Order (if any), Disclosure Statement, or the Sale Transaction and Sale Transaction Documents, as applicable, the Plan, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for intentional fraud, willful misconduct, or gross negligence, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.**

15. **Injunction**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Required Consenting Noteholders, the Creditor Litigation Trustee and the Debtor Liquidating Trust, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to**

5

**the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer, the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer or the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any); and (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Buyer or the Creditor Litigation Trust, the Debtor Liquidating Trust, or the property of the Debtors, the Reorganized Debtors, the Post Effective Date Debtor(s), the Creditor Litigation Trust, the Debtor Liquidating Trust, or the Assets purchased by the Buyer authorized by the Sale Order (if any), or property to be distributed under the Plan, except as to any setoff exercised in the Bankruptcy Court before the Plan is confirmed, or as contemplated or Allowed by the Plan.**

**By failing to object to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Article VIII.G of the Plan**.

**The injunctions in Article VIII.G of the Plan shall extend to any successors of the Debtors (including the Creditor Litigation Trust and the Debtor Liquidating Trust or the Post Effective Date Debtor(s), as applicable), the Reorganized Debtors, the Buyer and their respective property and interests in property**.

16. The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: January 22, 2024
       Wilmington, Delaware

/s/ Matthew P. Milana
Daniel J. DeFranceschi (No. 2732)
John H. Knight (No. 3848)
Michael J. Merchant (No. 3854
David T. Queroli (No. 6318)
Matthew P. Milana (No. 6681)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
Email: defranceschi@rlf.com
       knight@rlf.com
       merchant@rlf.com
       queroli@rlf.com
       milana@rlf.com

*Counsel to the Debtors*