**Exhibit 1**

**Purchase Agreement**

# ASSET PURCHASE AGREEMENT

By and among

Liquid Asset Partners, LLC
as Purchaser,

Nogin Commerce, Inc.,
as Seller,

Effective as of **February 5, 2024**

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into effective as of February 5, 2024, by and between LIQUID ASSET PARTNERS, LLC, a Delaware limited liability company (the "Purchaser"), on the one hand, and Nogin Commerce, Inc., a Delaware corporation (the "Seller").

## RECITALS

A.      The Seller is engaged in the business of operating ecommerce outsourcing services to other businesses (the "Business").

B.      The Purchaser desires to purchase from the Seller, and the Seller desires to sell to the Purchaser, the Acquired Assets (as defined below) located at 2250 Roswell Dr., Pittsburgh PA 15205 (the "Facility") upon the terms and subject to the conditions set forth herein.

C.      The Seller is a debtor-in-possession under title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and, on December 5, 2023, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (such court, the "Bankruptcy Court").

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

## SECTION 1
## PURCHASE OF ASSETS

**1.1     Acquired Assets**. Subject to the terms and conditions hereof, at the Closing, the Seller shall sell, assign, transfer, convey, and deliver to the Purchaser, and the Purchaser shall purchase and accept, all of the Seller's right, title and interest in and to all of the Seller's tangible and intangible personal property assets described on Schedule A attached hereto (collectively, the "Acquired Assets").

**1.2     Sale Free and Clear of Liens.** The Acquired Assets shall be transferred by the Seller, as provided in the Sale Order, free and clear of all liens, claims and encumbrances (the "Liens"). If requested in writing by Purchaser, Seller shall provide proof of all Liens being released from the Acquired Assets.

**1.3     Assumption of Liabilities.** Notwithstanding anything to the contrary in this Agreement, the Purchaser is not assuming any liabilities of the Seller or its estate, nor shall Purchaser be deemed to be a successor to the Seller or its estate for any purpose whatsoever. In furtherance of the foregoing, the Purchaser is not hiring any of Seller's employees or operating any of the existing business.

**1.4 As Is Sale.** PURCHASER SPECIFICALLY (A) ACKNOWLEDGES AND AGREES THAT SELLER IS SELLING AND PURCHASER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS-IS, WHERE IS" AND "WITH ALL FAULTS" BASIS AND THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER IS NOT MAKING, AND PURCHASER IS NOT RELYING ON, ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER, ITS AGENTS, OR BROKERS AS TO ANY MATTERS CONCERNING THE ACQUIRED ASSETS, AND (B)

CONFIRMS AND AGREES THAT PURCHASER IS ENTERING INTO THIS AGREEMENT BASED SOLELY UPON PURCHASER'S INVESTIGATIONS AND DUE DILIGENCE HERETOFORE CONDUCTED BY PURCHASER WITH RESPECT TO THE ACQUIRED ASSETS, THE BUSINESS AND ALL OTHER MATTERS RELATING TO THE TRANSACTION CONTEMPLATED HEREIN AND WILL RELY SOLELY UPON SUCH INVESTIGATIONS AND DILIGENCE (AND NOT ANY REPRESENTATIONS, WARRANTIES OR OTHER ASSURANCES OF SELLER, OR ANY OTHER PERSON OR ENTITY ACTING ON THEIR RESPECTIVE BEHALF EXCEPT FOR REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY OR ON BEHALF SELLER IN THIS AGREEMENT.

**1.5** **Remaining Assets and Abandonment.** Purchaser shall remove of all Acquired Assets in Schedule A by the Premise Exit Date. If the Acquired Assets shown in Schedule A are not able to be removed by the Premise Exit Date, Purchaser agrees that it has abandoned such Acquired Assets. In connection therewith, Seller permits any such abandonment provided for in this Section 1.5. Purchaser agrees that for any Acquired Assets that Purchaser abandons at the Facility, Purchase shall abandon and leave them in a neat and orderly fashion.

## SECTION 2
## PURCHASE PRICE

**2.1** **Purchase Price.** The purchase price for the Acquired Assets shall be One Hundred and Five Thousand Dollars ($105,000) (the "Purchase Price"). On the Closing Date, the Purchaser shall pay the Purchase Price to Seller by wire transfer of immediately available funds to an account designated by Seller.

## SECTION 3
## CLOSING

**3.1** **Closing.** Subject to the provisions of Section 6 herein have been satisfied, the closing (the "Closing") shall take place remotely via exchange of documents by electronic mail on the business day following the entry of the order or orders entered by the Bankruptcy Court approving the sale of the Acquired Assets no later than February 12th, 2024 11:59PM EST (the "Sale Order"), unless another time or date, or both, are agreed to in writing by the parties hereto (the "Closing Date") and shall be effective at 11:59 PM on the Closing Date.

**3.2** **Seller Closing Deliveries**. The Seller shall deliver to the Purchaser the following documents on the Closing Date:

a) bill of sale, assignment and general conveyance, in the form attached hereto as Exhibit A, dated as of the Closing Date, with respect to the Acquired Assets sufficient to vest title in the Acquired Assets to the Purchaser.

b.) the Premises Access Agreement in the form attached hereto as Exhibit B allowing, among other matters, (i) Purchaser (and its agents, representatives and purchasers of any of the Acquired Assets) shall have full and unfettered access to the location through February 29th, 2024, solely as needed in order to catalog, group, market and sell by auction, liquidation sale or otherwise any of the Acquired Assets for up to the period of time set forth in such Premises Access Agreement and solely to the extent provided in the Premises Access Agreement, and (ii) Seller shall pay rent as set forth in the Premises Access Agreement through February 29th, 2024.

**3.3** **Purchaser Closing Deliveries.** The Purchaser shall deliver the following to the Seller on the Closing Date:

a) the Purchase Price by wire transfer of immediately available funds to an account designated by the Seller; and

b.) all other documents reasonably requested by the Seller to be delivered by the Purchaser in connection with the consummation of the transactions contemplated by this Agreement.

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller hereby represents and warrants to the Purchaser as of the date hereof and as of the Closing Date as follows.

**4.1** **Authorization for Agreement and Consents.** The Seller has all requisite limited liability company power and authority, to enter into this Agreement and to sell, assign, transfer and convey the Acquired Assets to the Purchaser under this Agreement. The performance of this Agreement by the Seller is subject to the entry of the Sale Order and, upon entry of the Sale Order, any documents or instruments to be executed and delivered by Seller pursuant hereto constitute and will constitute legal, valid and binding obligations of the Seller, as applicable, enforceable in accordance with their terms.

**4.2** **No Change in Acquired Assets.** The Acquired Assets shall be, in all material respects, in the same condition and quantities as inspected by Purchaser on January 16th, 2024, with exception of Section 4.4.

**4.3** **No Sale of Acquired Assets.** Seller shall have not sold or disposed of any of the Acquired Assets at any time prior to the Closing Date.

## SECTION 5
## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Seller as of the date hereof and as of the Closing Date as follows. The Purchaser hereby acknowledges that the Seller is relying on the following representations and warranties in entering into this Agreement.

**5.1** **Authorization for Agreement and Consents**. The Purchaser has all requisite company power and authority to enter into this Agreement and to perform its obligations hereunder. The execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly authorized by all necessary actions of the Purchaser under applicable law. This Agreement and any documents or instruments to be executed and delivered by the Purchaser pursuant hereto constitute and will constitute legal, valid and binding obligations of the Purchaser enforceable in accordance with their terms.

**5.2** **Respect of Property.** At all times while on the Seller's property (whether leased or owned by Seller), the Purchaser shall respect the property.

**5.3** **Premise Exit Date:** The Purchaser agrees to exit the premises on or prior to February 29th, 2024 (the "Premise Exit Date").  Purchaser understands and acknowledges that Seller will file a motion (the "the Rejection Motion") with the Bankruptcy Court seeking Bankruptcy Court

approval to reject the lease (as amended, the "Lease") governing the Seller's access and rights in and to the Facility, effective as of February 29, 2024. Purchaser's access to the Facility shall cease notwithstanding any provision contained in the Premise Access Agreement to the contrary, and Purchaser shall exit and surrender the Facility on or before February 29, 2024. Purchase shall comply with all of Seller's reasonable instructions to Purchaser in furtherance of exiting and surrendering of the Facility by February 29, 2024. To the extent that Purchaser remains at the Facility after February 29, 2024, Purchase shall pay to the applicable obligee, and indemnify and hold harmless Seller for, any rent, costs and/or expenses incurred by the Seller and owed to such obligee, including as the Facility's landlord (or landlord representative) imposes on, or demands be paid by, Seller, as a result of the Purchaser's failure to exit and surrender the Facility on or before February 29, 2024. Purchaser shall be disassembling and removing the Acquired Assets from the Premises (the "Removal Process") and new or further damage may occur to the Premises resulting from the Removal Process. Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall use its best efforts to repair any new and or further damage to the Premises caused by the Removal Process no later than the end of the Occupancy Period. In the event any new or further damage is brought to the attention of the Purchaser after the exit and surrender of the facility, Purchaser shall be permitted reasonable time and access to repair the damage without having to pay any rent.

**5.4**     **Sophistication**. Purchaser is a knowledgeable, experienced and sophisticated purchaser of assets like the Acquired Assets, has consummated various transactions comparable or larger in size and complexity to the transaction contemplated by this Agreement and is relying solely on its own sophistication, experience and expertise and that of Purchaser's consultants in purchasing the Acquired Assets.

## SECTION 6
## REPRESENTATIONS OF TRANSACTION

**6.1**     **Representations.** This Agreement and the obligations of the parties hereto are subject to (i) the Acquired Assets being sold to Purchaser free and clear of all Liens as provided for in the Sale Order, (ii) the actions taken by the Purchaser in connection with the sale were undertaken in good faith, and the Purchaser is a good faith purchaser and is entitled to the full protection; (iii) the Purchaser is not liable for any claims held by any person against the Seller or for any obligations of the Seller arising under or related to the Acquired Assets except as expressly set forth in this Agreement; (iv) allowing Purchaser to auction, liquidate and/or sell the Acquired Assets at their present locations pursuant to the Premises Access Agreement entered into between Seller and Purchaser; (v) the Seller has complied with the notice requirements with respect to the transactions contemplated hereby, and (vi) the entry of the Sale Order.

## SECTION 7
## CONDITIONS PRECEDENT

**7.1**     **Conditions Precedent to the Obligations of the Purchaser.** The obligations of the Purchaser hereunder are subject to the satisfaction on or prior to the Closing Date of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Purchaser, unless such a waiver is prohibited by law).

   a.) **Compliance with Agreement.** The Seller shall have performed and complied in all material respects with all of its obligations under this Agreement which are to be performed or complied with by Seller prior to or on the date of the Closing.

 **b.) No Order.** No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no claim, action, suit, arbitration, inquiry, adverse proceeding or investigation (each, an "Action") shall be pending by or before any governmental authority or arbitrator against the Purchaser or the Seller.

 **c.) Execution of Documents.** Seller shall have executed a bill of sale, an assignment and such other documents as reasonably requested by Purchaser in order to transfer the Acquired Assets to Purchaser.

**7.2 Conditions Precedent to the Obligations of the Seller.** The obligations of the Seller hereunder are subject to the satisfaction on or prior to the Closing Date of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Seller, unless such a waiver is prohibited by law).

 **a.) Payment of Purchase Price Balance.** Purchaser shall pay the Purchase Price in accordance with this Agreement.

 **b.) Compliance with Agreement.** The Purchaser shall have performed and complied in all material respects with all of their obligations under this Agreement which are to be performed or complied with by Purchaser prior to or on the date of the Closing Date.

 **c.) No Order.** No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no Action shall be pending by or before any governmental authority or arbitrator against the Purchaser or the Seller, seeking to restrain, enjoin or materially restrict the transactions contemplated by this Agreement.

 **d.) Site Access.** Seller will exit the Facility by February 10th, 2024 and remove any trash that is not related to the Acquired Assets.

## SECTION 8
## MISCELLANEOUS

**8.1 Expenses.** Each party will be responsible for the payment of its own costs and expenses (including, without limitation, professional fees of its attorneys, accountants and other advisors) in connection with the transactions contemplated herein.

**8.2 Notice of Litigation.** During the period from the date of this Agreement to the Closing Date, each party will promptly inform the other party in writing of any litigation commenced or, to the knowledge of such party, threatened against such party in respect of the transactions contemplated by this Agreement or the Business.

**8.3 Good Faith.** The Seller and the Purchaser shall cooperate in all reasonable respects and in good faith in seeking the consummation of the transactions contemplated hereby.

**8.4** **Governing Law.** This Agreement, and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution, termination, validity, performance or nonperformance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and to be performed in such State, without regard to any conflict of laws principles thereof.

**8.5** **Jurisdiction and Jury Waiver.** Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement or any other transaction documents contemplated hereby and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement or any other transaction document contemplated hereby, any breach or default hereunder or thereunder, or the transactions, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.7; <u>provided</u>, <u>however</u>, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware sitting in New Castle County or the courts of the State of Delaware sitting in New Castle County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law

**8.6** **Amendment and Modification.** No amendment, modification, waiver, replacement, termination, or cancellation of any provision of this Agreement will be valid, unless the same will be in writing and signed by the Purchaser and the Seller party hereto.

**8.7** **Notices.** All notices, requests, demands and other communications hereunder shall be made in writing. Notices, requests, demands and other communications shall be deemed to be duly given upon the date of delivery, if delivered by hand; upon the date of sending, if delivered by email; upon the second business day after mailing, if mailed by certified or registered mail with postage prepaid; or upon the first day after dispatch, if sent by nationally-recognized overnight courier as follows:

> If to the Seller:
> Nogin Commerce, Inc.
> 105 E. 34th St. No. 137
> New York, NY 10016
> Attn: Michael Bassiri
> mbassiri@nogin.com
>
> If to the Purchaser:
> Liquid Asset Partners, LLC
> 2700 Patterson Ave. SE
> Grand Rapids, MI 49546
> Attn: Chad Warner
> Chad@LiquidAP.com

or to such other addresses as any party may provide to the other parties in writing.

**8.8** **Entire Agreement.** This Agreement, together with its schedules and the certificates, agreements, documents, instruments and writings that are delivered pursuant hereto, constitutes the entire agreement and understanding of the Purchaser and the Seller with respect to the subject matter

hereof and supersedes all prior understandings, agreements, or representations by or among the Purchaser and the Seller, written or oral, to the extent they relate in any way to the subject matter hereof or the transactions contemplated hereby.

**8.9** **Successors.** This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and to their respective successors and permitted assigns.

**8.10** **Counterparts and Electronic Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument. Signatures in Portable Document Format or other similar electronic format shall constitute original signatures for the purposes of this Agreement.

**8.11** **Severability.** The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of the other provisions hereof.

**8.12** **Drafting Presumption.** The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

**8.13** **Headings.** The headings used in this Agreement are for convenience only and shall not constitute a part of this Agreement.

**8.14** **Schedules.** All of the Schedules attached hereto are incorporated herein and made a part of this Agreement by reference.

**8.15** **Third Party Beneficiaries.** This Agreement is solely for the benefit of the parties hereto and their respective successors and permitted assigns, and this Agreement shall not be deemed to confer upon or give to any other third party any remedy, claim of liability or reimbursement, cause of action, or other right.

**8.16** **Post-Closing Execution of Documents.** Seller agrees that subsequent to the Closing Date, Seller shall execute all documents reasonably requested by Purchaser in order to convey the Acquired Assets to Purchaser.

(Signature page to follow)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**PURCHASER:**

LIQUID ASSET PARTNERS, LLC

By: _____*Chad Warner*_____
       8160632310CA46E...
Name: Chad Warner
Title: Managing Partner


**SELLER:**

Nogin Commerce, Inc.

By: _____*Jonathan Huberman*_____
       5389AB1C768741B...
Name: Jonathan Huberman
Title: CEO

## SCHEDULE A [ACQUIRED ASSETS]

| | | | | | |
|---|---|---|---|---|---|
| Teardrop Pallet Racking | | | | | |
| 96 | Upriights | 48"x16' | 3"x3" | | |
| 546 | Beams | 96" | 3.5" | | |
| 248 | Beams | 96" | 2.5" | | |
| 634 | Wire Decks | 46"x49" | | | |
| | | | | | |
| Teardrop Pallet Racking | | | | | |
| 84 | Uprights | 48"x8' | 1.5"x3" | | |
| 442 | Uprights | 48"x10' | 1.5"x3" | | |
| 43 | Uprights | 48":x10' | 2.25"x3" | | |
| 12 | Uprights | 48"x9' | 3"x3" | | |
| 1172 | Beams | 96" | 3.25" | | |
| 1172 | Wire Decks | 46"x49" | | | |
| | | | | | |
| 120 | Beams Down | | | | |
| | | | | | |
| T-Bolt Pallet Racking | | | | | |
| 40 | Uprights | 42"x20' | 3"x3" | | |
| 278 | Beams | 96" | 4" | | |
| 278 | Wire Decks | 43"x46" | | | |
| | | | | | |
| Interlake u-Punch Pallet Racking | | | | | |
| 62 | Uprights | 42"x16' | | | |
| 96 | Beams | 96" | 3" | | |
| 316 | Beams | 96" | 3.25" | | |
| 412 | Wire Decks | 45.5"x42.5" | | | |
| | | | | | |
| Carton Flow | | | | | |
| 4 | Sections 4 levels each sections 8 bin positions 128 total bin positions | | | | |

| Quantity | Description |
|---|---|
| 234 | Light Duty Racking 4'x8'x7' with 6 wire shelves each |
| 3500 | Linear Footage Rolling Conveyor Througout |
| 1 | 2007 Maroon Ford Van. Est63,000 miles VIN: 1FMNE11L67DA19477 |
| 1 | White Ford Shuttle Transit 350HD 2017 17,448 Miles VIN: 1FDES8PM8JKB31850 |
| 14 | Big Ass Fans |
| 2 | Pearson Case Erectors CE25-T |
| 1 | JLG Scissor Lift Model: 1932E2 |
| 50 | Metro Racks |
| 1 | Totes |
| 30 | Workstations |
| 25 | Dump Bins |
| 8 | TVs |
| 2 | Rolling Ladders |
| 10 | Rolling White Boards |
| 25 | Flat Cart |
| 4 | 2-Step Ladder |
| 30 | Tiered Cart |
| 10 | Manual Pallet Jack |
| 10 | 6-Step Ladder |
| 10 | Mobile Workstation |
| 330 | Employee Lockers |
| 1 | Security Cage |
| 25 | Plastic Shelving Units |
| 10 | Storage Cabinets |
| 3 | Best Flex Conveyor |
| 5 | Canvas Dump Bin |
| 20 | Hanging Fans |
| 10 | Floor Fans |

| Quantity | Description |
|---|---|
| 3 | Furniture Dollies |
| 1 | lot of Rolling Conveyor Down |
| 15 | Trash Bins |
| 50 | Folding Chairs |
| 2 | Janitor Carts |
| 1 | Carpet Extractor 3-500 |
| 1 | Misc. Office Furniture: 150 Chairs, 9 Couches, File Cabinets, Desks, etc. |
| 1 | Hose Reel |
| 1 | Crown Electric Pallet Jacks |
| 2 | Unicarries Electric Pallet Jack |
| 1 | Heat Seal HS-217T |
| 5 | Gardner Denver Compressor |
| 6 | Security Cage Shelves |
| 2 | Airplus Storo Pack Airplus Mini |
| 1 | HSM ProfiPack P425 |
| 3 | Loveshaw Case Sealers LDX-RTB |
| 1 | Lot of IT Throughout- Server Racks, Projectors, Scan Guns, Copiers, Printers, 50 Laptops, 50 Monitors, 50 Keyboards, 50 PCs, etc. |
| 44 | Breakroom Chairs |
| 11 | Breakroom Round Tables |
| 20 | Breakroom Stools |
| 3 | Stainless Steel Tables |
| 5 | Breakroom Hightop Tables |
| 20 | Breakroom Stools |
| 1 | Delfield 3-Door Stainless Steel 6000XL Refrigerator |
| 1 | Delfield 2-Door Stainless Steel Refrigerator |
| 8 | Commercial Microwaves |
| 8 | Trash Bins |

| Quantity | Description |
|---|---|
| 2 | Manawatowic Ice Maker |
| 2 | Coffee Maker |
| 1 | Delfield Single Door Freezer |
| 2 | Breakroom Counters |
| 1 | Foosball Table |
| 10 | Wire Dump Bins |
| 30 | Uboat Carts |
| 1 | Yale Forklift |
| 1 | Crown Walkie Stacker |
| 1 | JLG Scissor Lift 2030ES |
| 1 | SkyJack Scissor Lift SJII 3ss0 |
| 1 | Curitis Lift |
| 3 | Chargers |
| 1 | Misc. Warehouse |
| 1 | Golf Cart |
| 1 | MiniMag Floor Cleaner |
| 1 | Floor Buffer |
| 1 | Washer |
| 1 | Dryer |
| 1 | Flambable Cabinets |
| 1 | Air Pac Portable AC Unit |
| 1 | Sports O Zone Sanitation Machiine |

Seller may leave additional assets for Purchaser, if parties agree in writing.

**Exhibit A**
**Bill of Sale**

This Bill of Sale is entered into as of _____, 2024 by Nogin Commerce, Inc., a Delaware limited liability company ("**Transferor**"), in favor of LIQUID ASSET PARTNERS, LLC, a Delaware limited liability company ("**Transferee**").

Reference is made to that certain Asset Purchase Agreement, dated _____, by and between Transferor, as Seller, and Transferee, as Purchaser (the "**Agreement**"). Any capitalized term used but not defined in this Bill of Sale shall have the meaning set forth in the Agreement.

a.) <u>Conveyance</u>. For the Purchase Price and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, subject to the terms and provisions of the Agreement (including the representations and warranties contained therein), the Sale Order, and Transferee's undertaking to remove and dispose of certain Acquired Assets remaining in the Facility as of immediately prior to the Closing Date, Transferor hereby, irrevocably sells, assigns, transfers, conveys, grants, and delivers to Transferee, all of its right, title, and interest in and to the Acquired Assets.

b.) <u>No Assumption of Liabilities</u>. Notwithstanding anything to the contrary in this Bill of Sale, unless otherwise expressly provided for in the Agreement, the Transferee is not assuming any liabilities of the Transferor or its estate, nor shall Transferee be deemed to be a successor to the Transferor or its estate for any purpose whatsoever.

c.) <u>Further Assurances</u>. Transferor, for itself and its successors and assigns, hereby covenants and agrees that, at any time and from time to time on Transferee's written request, Transferor will do, execute, acknowledge, and deliver or cause to be done, executed, acknowledged, and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required by Transferee in order to assign, transfer, set over, convey, assure, and confirm unto and vest in Transferee and its successors and assigns title to the assets sold, conveyed, and transferred by this Bill of Sale.

d.) <u>Governing Law</u>. Section 8.4 and 8.5 of the Agreement are hereby incorporated by reference and made a part hereof.

e.) <u>Amendment.</u> No amendment, modification, waiver, replacement, termination, or cancellation of any provision of this Bill of Sale will be valid, unless the same will be in writing and signed by the Transferee and the Transferor.

f.) <u>Counterparts</u>. This Bill of Sale may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Bill of Sale delivered by facsimile, e-mail, or other means

of electronic transmission (including DocuSign®) shall be deemed to have the same legal effect as delivery of an original signed copy of this Bill of Sale.

      IN WITNESS WHEREOF, Transferor and Transferee have each duly executed and delivered this Bill of Sale as of the date first written above.

**TRANSFEREE:**

**LIQUID ASSET PARTNERS, LLC**

By:_____
Name: Chad Warner
Title: Managing Partner

**TRANSFEROR:**

**Nogin Commerce, Inc.**


By:_____
Name:
Title: