**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nogin, Inc., *et al.,* | Case No. 23-11945 (CTG) |
| Debtors.[1] | (Jointly Administered) |
| Nogin, Inc., *et al.,* | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 24-_____ (  ) |
| Reliance Financial LLC and Fiji Funding, LLC | |
| Defendants. | |

**EMERGENCY COMPLAINT TO DETERMINE PRIORITY OF DEFENDANTS'**
**CLAIMS IN CONNECTION WITH PLAN CONFIRMATION OBJECTIONS**

Nogin, Inc. and its above-captioned debtor-affiliates (the "**Debtors**"), through their undersigned counsel, bring this complaint against Reliance Financial LLC ("**Reliance**") and Fiji Funding, LLC ("**Fiji**," and together with Reliance, the "**Defendants**"). In support hereof, the Debtors respectfully allege as follows:

**NATURE OF THE ACTION**[2]

1.       On February 22, 2024, the Defendants objected to the Debtors' chapter 11 plan ("**Plan**") on the basis that they hold a senior interest in certain property (the Debtors' accounts

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification number are: Nogin, Inc. (0703); Nogin Commerce, Inc. (0719); Native Brands Group LLC (0504). The mailing address for the Debtors is 105 E. 34th St., Suite 137, New York, NY 10016.

[2] Undefined capitalized terms in this section have the meaning ascribed to them below.

receivable) that is superior to the liens in those receivables held by the Debtors' DIP Lender and Senior Noteholders.  D.I. 308 & 309 (the "**Objections**").  The Defendants have filed secured proofs of claim and assert that unless and until they receive payment in full of their claims, the Plan cannot be confirmed.

2.      Because the Objections concern the priority of competing interests in property, they must proceed by way of adversary proceeding.  *See* Fed. R. Bankr. P. 7001(2) (proceedings to determine the priority of a lien or other interest in property are adversary proceedings).  To avoid any later assertion that the Defendants' procedural rights have been violated—and because one of the Defendants asserts that an adversary proceeding must be brought—the Debtors hereby respond to the Objections through this complaint to determine the dispositive issue of priority.  The Debtors have concurrently moved for summary judgment and for an order expediting the summary judgment schedule so that the motion can be heard at the confirmation hearing scheduled on March 26, 2024.

3.      The Court can determine the question of priority as a matter of law based on the documentary record.  The Defendants hold a junior interest in the Debtors' accounts receivable for two alternative, independent reasons.

4.      First, there can be no genuine dispute that the Senior Notes were the first party to perfect their security interest in the Debtors' receivables, and therefore hold the senior interest. Under Article 9 of the Uniform Commercial Code, priority disputes in accounts receivable are resolved based on the "first-to-perfect" rule.  This rule governs the priority not only of parties who hold a security interest in a debtor's receivables, but also the priority of parties who outright buy receivables.  *See* UCC § 9-109(a)(3) (Article 9 applies to sales of receivables).  If a debtor sells a receivable that already is subject to a preexisting security interest, that security interest continues

2

to exist in the receivable, and the "first-to-perfect" rule determines the priority of the buyer's interest vis-a-vis the preexisting lender. *See* UCC § 9-322(a)(1) & (2); UCC § 9–315(a)(1).

5.      There can be no dispute that the Senior Notes perfected first. They received liens in all of the Debtors' assets, including receivables, on August 26, 2022, and they filed UCC-1 financing statements perfecting those liens on September 1, 2022. By contrast, the Defendants received their interests through receivables financing agreements dated July, August, and September 2023, respectively. And the Defendants did not file financing statements until December 4 and 5, 2023—the day before, and day of, the bankruptcy filing.

6.      Applying the "first-to-perfect" rule that governs priority disputes in receivables, the Court can determine priority as a matter of law based on the undisputed facts. The Senior Notes' perfection predates the Defendants' perfection—indeed, it predates the creation of the Defendants' interest altogether. The Senior Notes have priority, and the Defendants took the receivables subject to that senior interest.

7.      Under the Final DIP Order, the DIP Lender also holds senior liens. It holds first-priority liens on all prepetition collateral other than "Permitted Prior Liens"—liens that were senior to the Senior Notes as of the bankruptcy filing (which the Defendants were not). Likewise, the Final DIP Order granted the Senior Notes adequate protection liens, junior only to the DIP Lender's liens and any Prior Permitted Liens, to compensate them for any diminution in value due to, among other things, the priming of their liens by the DIP loans. These liens too are senior to the Defendants.

8.      Second, and in the alternative, the Court may avoid as preferences the transfers of the security interest that the Defendants received in the Debtors' receivables, because those transfers occurred on the day before, and day of, the bankruptcy. Regardless of whether the

3

Defendants' interest in the receivables is characterized as a lien or an ownership interest, that interest is a "security interest" that, when transferred, constituted a transfer of an interest of the debtor in property.  Because the Defendants filed financing statements more than 30 days after the date of their agreements (July, August, and September 2023), the "transfers" under those agreements are deemed to occur on the date of perfection for preference purposes.  11 U.S.C. § 547(e)(2)(B).  Thus, the Debtors transferred security interests to the Defendants on the day before bankruptcy, on account of obligations they owed under antecedent agreements dated months earlier, while presumptively insolvent under Bankruptcy Code § 547(f), and which elevated the Defendants from unsecured to secured, improving their position over unsecured creditors in a hypothetical liquidation.  The transfers thus are voidable preferences.

9.      Although one of the Defendants asserts that its interest automatically perfected pursuant to UCC § 9-309(2), that provision applies only to isolated transactions where the subject receivables are not a significant part of the assignor's accounts, and it does not apply to entities that are in the business of lending.  In this case, both Fiji and Reliance are in the business of lending, and their financing statements purport to encumber "all" of the Debtors' accounts, rendering the provision inapplicable.

10.     The Debtors therefore seek a judgment of this Court declaring that the interests asserted by the Defendants in the Debtors' accounts receivable are junior in priority to the interests held by the Senior Noteholders and DIP Lender.  In the alternative, the Debtors seek a judgment avoiding the eve-of-bankruptcy transfers to the Defendants creating their interest.   Ultimately, because there is insufficient collateral available to satisfy the senior claims, there is no collateral

available in which Defendants can claim an interest, and they hold unsecured claims under Bankruptcy Code § 506(a).[3]

## PARTIES

11.     Debtor Nogin Inc. is a corporation incorporated under the laws of Delaware, located at 105 E. 34th St., Suite 137, New York, NY 10016.

12.     Debtor Nogin Commerce, Inc. is a corporation incorporated under the laws of Delaware, located at 105 E. 34th St., Suite 137, New York, NY 10016.

13.     Debtor Native Brands Group LLC is a limited liability company formed under the laws of California, located at 105 E. 34th St., Suite 137, New York, NY 10016.

14.     On December 5, 2023 (the "**Petition Date**"), the Debtors filed the above-captioned chapter 11 cases.

15.     Defendant Reliance Financial LLC is a limited liability company formed under the laws of New Jersey, located at 200 Central Ave., Farmingdale NJ 07727.  According to New Jersey's entity search records, Reliance's registered agent for service is Reliance Financial LLC, 107 McAdoo Avenue, Jersey City, NJ 07305.

16.     Defendant Fiji Funding, LLC is a limited liability company formed under the laws of New Jersey, located at 1950 Swarthmore Ave., Lakewood NJ 08701, and whose registered agent for service is Tawil Filings LLC, 7 Sherwood Drive, Lakewood, NJ 08701.

---

[3] The Debtors note that Fiji and Reliance received substantial payments from the Debtors or retained collections on the Debtors' accounts both during the 90 day period prior to the petition date and during the post-petition period.  The Debtors expressly reserve all of their rights to seek to avoid or otherwise recover such payments through a separate adversary proceeding filed later in these cases either directly or by a successor in interest which is vested with the right to assert claims and causes of action pursuant to the Plan.

5

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because the adversary proceeding arises under the Bankruptcy Code, and arises in and relates to the Debtors' chapter 11 cases.  This adversary proceeding also is a response to the Defendants' Objections to confirmation of the Plan, and therefore arises in the Debtors' cases.

18.     On February 20, 2024, each Defendant filed a proof of claim with respect to its receivables financing claim, thereby consenting to this Court's jurisdiction.  *See* Proof of Claim Nos. 102 (Reliance) & 104 (Fiji).

19.     The Debtors seek relief under 28 U.S.C. § 2201 and section 105(a) of the Bankruptcy Code, as the parties to this action have adverse legal interests and are in dispute over a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

20.     Venue is proper in this Court under 28 U.S.C. § 1409(b).

21.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

22.     Pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, the Debtors consent to the entry of a final judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A.     On September 1, 2022, the Senior Notes Perfect Their Liens In Substantially All of the Debtors' Assets, Including Accounts Receivable

23.     On August 26, 2022, Nogin issued $65.5 million in notes (the "**Senior Notes**"). Pursuant to the security agreement governing that issuance, the Senior Notes are secured by a lien on substantially all of the Debtors' assets.  *See* Transmittal Dec. **Exhibit A** (Pledge and Security

6

Case 23-11945-CTG    Doc 351    Filed 03/07/24    Page 7 of 18

Agreement).[4] The collateral securing the lien expressly included the Debtors' receivables. *See id.* at § 3.01 (granting security interest in, among other things, all "Accounts" and "Receivables").

24.     On September 1, 2022, the collateral agent for the Senior Notes filed "all asset" UCC-1 financing statements covering the liens securing the Senior Notes, thereby perfecting those liens. *See* Transmittal Dec. **Exhibit B** (financing statements perfecting the Senior Notes).

25.     Under the Final DIP Order (defined below), the Debtors stipulated to the validity, perfection, and priority of the Senior Notes. Among other things, the Debtors stipulated that the Senior Notes hold "a first-priority security interest in and liens on substantially all assets of the Debtors." Final DIP Order ¶ E(v).

**B.     Between July and September 2023, the Debtors Enter Into Receivables Financing Agreements With Defendants**

26.     Beginning in July 2023, Debtor Nogin Commerce, Inc. ("**Nogin Commerce**") entered into two receivables financing agreements with Reliance and one with Fiji to help fund business operations. In each of these agreements, the term "receivables" was defined as all of Nogin's "future accounts, contract rights, and other obligations arising from or relating to the payment of monies from [its] customers and/or other third party payors … for the payment of … sale of [Nogin's] goods or services…." (the "**Receivables**").

27.     First, on July 24, 2023, Nogin Commerce and Reliance entered into a "Standard Merchant Cash Advance Agreement" (the "**July Receivables Agreement**") under which Reliance advanced $2 million in exchange for the assignment of $2.68 million of Receivables to be paid over a 36-week period in weekly installments of $74,445. *See* Transmittal Dec. **Exhibit C** (copy of July Receivables Agreement). In the agreement, Reliance expressly acknowledged the

---

[4] All exhibits can be located in the *Transmittal Declaration of Cory D. Kandestin in Support of Debtors' Motion for Summary Judgment*, filed concurrently herewith.

7

existence of the Senior Notes and their first-priority lien.  *See* Ex. C. § 25 ("RF acknowledges that Merchant's convertible debt facility has a first lien").  Reliance asserts that as of the Petition Date, $1,339,999.90 is still owing under the July Receivables Agreement.

28.     Second, on August 15, 2023, Nogin Commerce and Reliance entered into another "Standard Merchant Cash Advance Agreement" (the "**August Receivables Agreement**") under which Reliance advanced $2 million in exchange for the assignment of $2.78 million of Receivables, to be paid over a 32-week period in weekly installments of $86,875.  *See* Transmittal Dec. **Exhibit D** (copy of August Receivables Agreement).  In the agreement, Reliance again acknowledged the existence and priority of the Senior Notes.  *See* Ex. D. § 25 ("RF acknowledges that Merchant's convertible debt facility has a first lien").  Reliance asserts that as of the Petition Date, $1,476,875 is still owing under the August Receivables Agreement.

29.     Third, on September 26, 2023, Nogin Commerce and Fiji entered into a "Standard Merchant Cash Advance Agreement" (the "**September Receivables Agreement**") under which Fiji advanced $750,000 in exchange for the assignment of $1,065,000 receivables, to be paid over a 30-week period in weekly installments of $35,500.  *See* Transmittal Dec. **Exhibit E** (copy of September Receivables Agreement).  In the agreement, Fiji acknowledged that it was on constructive notice of publicly filed liens.  *See* Ex. E § 28 (all liens for which Fiji had "actual or constructive knowledge as of the date of this Agreement").  Fiji asserts that as of the petition date, $710,000 is still owing under the September Receivables Agreement.

30.     Neither Reliance nor Fiji filed a UCC-1 financing statement at the time that it entered into its respective agreement(s) with Nogin Commerce.

31.     Reliance filed UCC-1 financing statements with respect to the July Receivables Agreement and August Receivables Agreement on December 4 and December 5, 2023.  Reliance

8

filed its financing statement in California.  Fiji likewise filed a UCC-1 financing statement with respect to the September Receivables Agreement on December 4, 2023.  Fiji filed its financing statement in Delaware.  Copies of the financing statements are attached to the Transmittal Dec. as **Exhibit F-1** and **F-2** (Reliance and Fiji, respectively).

**C.    The Debtors File For Bankruptcy And Obtain DIP Financing That Is Senior To The Senior Notes And All Junior Prepetition Debt**

32.    The Debtors filed these chapter 11 cases on December 5, 2023.  That day, the Debtors filed a motion to approve postpetition financing to be provided by certain B. Riley entities (collectively, the "**DIP Lender**") in the amount of $24.7 million (including a roll-up of an $8.53 million bridge loan that a B. Riley affiliate provided in November 2023) (the "**DIP Financing**").

33.    The Debtors served the Defendants with copies of the motion to approve the DIP Financing and the relevant orders.  *See* Transmittal Dec. **Exhibit J** (relevant pages of affidavits of service).  The Defendants did not object to the relief requested or to entry of the interim or final orders.

34.    On January 30, 2024, the Court entered a final order approving the DIP Financing. *See* D.I. 244 (the "**Final DIP Order**") (copy attached to Transmittal Dec. as **Exhibit G**).  Under the Final DIP Order, the Debtors granted the DIP Lender post-petition liens on substantially all their assets as set forth in paragraph 6 of the order.  *See also* DIP Credit Agreement § 7.01 (granting liens in substantially all the assets of the Debtors, including "Accounts") (copy attached to Transmittal Dec. as **Exhibit G-1**).  The Final DIP Order provided that these liens were senior to all others, subject only to the DIP Carve-Out and to "Permitted Prior Liens."  Final DIP Order ¶ 7. The "Permitted Prior Liens" are liens that were otherwise permitted by the Senior Notes and that were senior in priority to the Senior Notes.  Final DIP Order ¶ E(vi).  In addition, under the Final DIP Order, the Senior Notes were granted adequate protection liens, junior only to the DIP

9

Lender's liens, to compensate them for any diminution in value due to, among other things, the priming of their liens by the DIP Loans.  Final DIP Order ¶ 12(a).

35.    Paragraph E of the Final DIP Order contains the "Debtors' Stipulations."  These stipulations include stipulations as to the validity, perfection, and priority of the Senior Notes.  *See* Final DIP Order ¶ E(vi) (liens securing the Senior Notes were "valid, binding, enforceable, non-avoidable, and properly perfected" and "had priority over any and all other liens" other than Permitted Prior Liens).

36.    Paragraph 33 of the Final DIP Order provides that the Debtors' Stipulations shall become binding on all parties in interest unless they bring a challenge on or before February 20, 2024.  The Defendants never asserted a timely challenge to the Debtors' stipulations.  Thus, they are now estopped and barred from doing so under the express terms of that order.

**D.    Under the Plan, the Senior Notes Will Receive Less Than Full Recovery**

37.    The Plan contemplates that if B. Riley Principal Investments, LLC ("**B. Riley**") is the successful bidder for the Debtors' reorganized equity interests and closes the sale transaction contemplated by the Plan, its DIP Financing claims will be converted to equity interests in the reorganized debtor.  The Plan also incorporates a settlement under which B. Riley will pay the holders of the Senior Notes $15.5 million.  Thus, of their approximately $67.8 million outstanding balance, the Senior Notes will receive a $15.5 million settlement payment, along with an interest in a post-confirmation trust that will receive certain retained causes of action and residual assets. The Senior Notes are an impaired class under the Plan.

38.    The Plan classifies the Defendants' claims as unsecured, as there is no collateral available to secure the claim after giving effect to the priority of the liens securing the Senior Notes, the DIP Financing, and the adequate protection liens granted under the Final DIP Order.

E.    **The Defendants Object to the Plan Because It Does Not Pay Them In Full**

39.    On February 20, 2024, each Defendant filed a proof of claim asserting a secured claim for the unpaid amounts owing under their respective agreements ($2,816,874.90 with respect to Reliance and $710,000 with respect to Fiji).  *See* Transmittal Dec. **Exhibits H & I** (attaching copies of the Reliance and Fiji proofs of claim).

40.    On February 22, 2024, Reliance and Fiji each filed an Objection to the Plan.

41.    Reliance "objects to confirmation of the Plan because it does not provide for payment in full of its secured claim as required by [the Bankruptcy Code]."  Reliance Objection ¶ 13.  Reliance also states that it might file a "forthcoming adversary proceeding" to determine whether its receivable financing agreements constituted a lien or an ownership interest (*i.e.* a loan or a true sale).  *Id.* ¶ 1 n.2.  To date it has not filed any such proceeding.

42.    Fiji similarly objects on the basis that its receivables agreement constituted a true sale and not a loan, and therefore in its view it must be paid in full for the Plan to be confirmable.

## COUNT I
### (Against Reliance)

**Declaratory Judgment That Reliance's Interest In The Receivables Is Subordinate To The Senior Notes' and DIP Lenders' Liens In The Receivables, Regardless Of Whether Reliance's Interest Is A Lien Or Ownership Interest**

43.    The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

44.    Reliance is bound by the stipulations in the Final DIP Order providing that the Senior Notes hold valid and properly perfected liens in all assets of the Debtors.

45.    Delaware law governs the priority of Reliance's interest in the Receivables.  *See* 6 Del. C. § 9-301 (subject to exceptions that do not apply here, the law of the place where the debtor is located governs priority disputes, which for a corporate debtor is the state of incorporation).

11

46.    In UCC nomenclature, an account receivable falls within the definition of "account," which is defined as "a right to payment of a monetary obligation, whether or not earned by performance, for (A) property that has been or is to be sold … [or] (B) services rendered or to be rendered…."  6 Del. C. § 9-102(2).

47.    Because receivables financing transactions often blur the lines between loans and sales, Article 9 governs not only loans secured by receivables, but also outright sales of receivables. *See* 6 Del. C. § 9-109(a)(3) ("Except as otherwise provided in subsections (c) and (d), this Article applies to … (3) a sale of accounts, chattel paper, payment intangibles, or promissory notes.").

48.    The Uniform Commercial Code thus treats a purchase of accounts receivable as a "security interest."  *See* 6 Del. C. § 1-201(37) (the term "security interest" includes "a buyer of accounts … in a transaction that is subject to Article 9"); *see also* 6 Del. C. § 9-102(73) ("secured party" includes "a person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold").  Thus, regardless of whether Reliance holds a lien or an ownership interest in the Receivables, that interest is a "security interest" under Article 9.

49.    Under the Article 9, a properly perfected security interest in an account receivable will continue in that collateral even if the debtor subsequently sells the receivable.  *See* 6 Del. C. § 9-315(a)(1) ("a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien").

50.    When two security interests exist in a receivable, Article 9 applies the "first-to-file-or-perfect" rule to determine the priority of those interests.  *See* 6 Del. C. § 9-322(a)(1) ("Conflicting perfected security interests and agricultural liens rank according to priority in time

of filing or perfection.  Priority dates from the earlier of the time a filing covering the collateral is made or the security interest or agricultural lien is first perfected….").

51.    The Senior Notes' security interest became perfected on September 1, 2022, upon the filing of the UCC-1 financing statement covering those liens.  *See* Exhibit B.  By contrast, Reliance filed UCC-1 financing statements on December 4 and December 5, 2023.

52.    Although Reliance contends that its interest became automatically perfected on the date of its agreements pursuant to 6 Del. C. 9-309(2), even if true this would mean only that Reliance became perfected on July 24, 2023 and August 15, 2023, respectively—still after the perfection of the Senior Notes on September 1, 2022.  It thus makes no difference whether Reliance became perfected in July and August 2023 or December 2023.

53.    The Senior Notes were the first to perfect their interest in Receivables.  They thus hold the senior interest in the Receivables as against Reliance.

54.    Reliance's interest in the Receivables likewise is junior to the DIP Lender's liens. Paragraph 7 of the Final DIP Order provides that the liens securing the DIP Financing are superior to all prepetition debt other than "Permitted Prior Liens," which are liens that were authorized by the Senior Notes and which were senior to the Senior Notes as of the petition date.  Reliance's interest in the Receivables is not a Permitted Prior Lien, because among other things it was not senior to the Senior Notes.

55.    For the same reason, Reliance's interest in the Receivables also is junior to the adequate protection liens securing the Senior Notes.

56.    Because Reliance has filed a secured proof of claim and has asserted an Objection to the Plan claiming a superior interest in the Receivables, an actual and justiciable controversy exists between the Debtors and Reliance warranting declaratory relief under 28 U.S.C. § 2201.

WHEREFORE, the Debtors request a judgment of this Court declaring that Reliance's interest in the Receivables under the July Receivables Agreement and August Receivables Agreement are subordinate to the liens of the DIP Lender and Senior Notes in the Receivables, and thus that Reliance's claim is an unsecured claim because there is insufficient collateral to fully satisfy those senior claims.

### COUNT II
### (Against Fiji)

**Declaratory Judgment That Fiji's Interest In The Receivables Is Subordinate To The Senior Notes' and DIP Lenders' Liens In The Receivables, Regardless Of Whether Fiji's Interest Is A Lien Or Ownership Interest, And Thus Is Unsecured**

57.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

58.     Fiji is bound by the stipulations in the Final DIP Order providing that the Senior Notes hold valid and properly perfected liens in all assets of the Debtors.

59.     As set forth in Count I and incorporated herein by reference, under Article 9, a properly perfected security interest in a Receivable will continue in that collateral even if the debtor subsequently sells the receivable to a third party.  Further, when comparing the priority of a buyer of Receivables as against a preexisting lender with a security interest in the Receivables, Article 9 applies the "first-to-file-or-perfect" rule to determine the priority of those interests.

60.     The Senior Notes' security interest became perfected on August 26, 2022, upon the filing of the UCC-1 financing statement covering those liens.  By contrast, Fiji filed its UCC-1 financing statement on December 4, 2023.

61.     The Senior Notes were the first to perfect their interest in Receivables.  They thus hold the senior interest in the Receivables as against Fiji.

14

62.     In addition, for the same reasons expressed in Count I and which are incorporated by reference, Fiji's interest in the Receivables is not a Permitted Prior Lien, because among other things it was not senior to the Senior Notes as of the petition date.  Therefore, Fiji's interest in the Receivables is subordinate in priority to the DIP Lender's lien in the Receivables, and to the adequate protection liens granted to secure the Senior Notes.

63.     Because Fiji has filed a secured proof of claim and has asserted an Objection to the Plan claiming a superior interest in the Receivables, an actual and justiciable controversy exists between the Debtors and Fiji warranting declaratory relief under 28 U.S.C. § 2201.

WHEREFORE, the Debtors request a judgment of this Court declaring that Fiji's interest in the Receivables under the September Receivables Agreement is subordinate to the liens of the DIP Lender and Senior Notes in the Receivables, and thus that Fiji's claim is an unsecured claim because there is insufficient collateral to fully satisfy those senior claims.

## COUNT III

### (Against Reliance and Fiji)

### In the Alternative, Judgment Avoiding Eve-Of-Bankruptcy Transfer of Security Interest

64.     The Debtors re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

65.     Regardless of whether the Debtors' agreements with Defendants are characterized as loans secured by receivables or as outright sales of receivables, the interest is an Article 9 "security interest," and the conveyance of that security interest constitutes a "transfer of an interest of a debtor in property."

66.     More than thirty days elapsed between the dates of the transfer of the security interest (which occurred in July, August, and September 2023, respectively) and the date of perfection (which occurred on December 4 and 5, 2023).  Thus, pursuant to 11 U.S.C. §

547(e)(2)(B), the "transfers" are deemed to occur on the date of perfection, that is, on December 4 and 5, 2023.

67.    These December transfers were on account of antecedent debts, as they were on account of obligations that the Debtors owed pursuant to preexisting agreements they entered into in July, August, and September 2023.

68.    The transfers occurred on the eve of bankruptcy, and were within the 90-day preference period.

69.    The transfers were made while the Debtor was presumptively insolvent under 11 U.S.C. § 547(f).

70.    The transfers elevated the Defendants from unsecured to secured, thus improving their position over unsecured creditors in a hypothetical liquidation.

71.    The transfer and perfection of the Defendants' security interest in the Receivables (whether that security interest take the form of a lien or ownership interest) is an avoidable preference.

72.    Based on reasonable due diligence in the circumstances of the cases, none of the defenses available under Bankruptcy Code § 547(c) apply to avoiding the transfers to Defendants of a security interest in the Receivables.

73.    The Defendants therefore do not hold a security interest in the Receivables (again, regardless of whether that security interest is a lien or ownership interest under Article 9).

WHEREFORE, in the alternative to Counts I and II, the Debtors request a judgment of this Court avoiding the transfer and perfection of the Defendants' security interests in the Receivables.

## PRAYER FOR RELIEF

The Debtors respectfully request that judgment be entered in their favor granting the following relief:

16

a.      Overruling the Objections to the Plan filed by the Defendants.

b.      Declaring that Reliance's interest in the Receivables under the July Receivables Agreement and August Receivables Agreement is subordinate to the liens of the DIP Lender and Senior Notes in that property, and that Reliance's claim thus is an unsecured claim because there is insufficient collateral to fully satisfy those senior claims.

c.      Declaring that Fiji's interest in the Receivables under the September Receivables Agreement is subordinate to the liens of the DIP Lender and Senior Notes in that property, and that Fiji's claim thus is an unsecured claim because there is insufficient collateral to fully satisfy those senior claims.

d.      In the alternative to the Declaratory Judgments above, avoidance of the transfer and perfection of the Defendants' security interests in the Receivables.

d.      Granting such other and further relief as the Court deems just and proper.

Dated:   March 7, 2024
         Wilmington, Delaware

*/s/ Cory D. Kandestin*

Daniel J. DeFranceschi (No. 2732)
John H. Knight (No. 3848)
Michael J. Merchant (No. 3854)
Cory D. Kandestin (No. 5025)
David T. Queroli (No. 6318)
Matthew P. Milana (No. 6681)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Fax:  302-651-7701
Email:  defranceschi@rlf.com
      knight@rlf.com
      merchant@rlf.com
      kandestin@rlf.com
      queroli@rlf.com
      milana@rlf.com

*Counsel to the Debtors*